GEORGE L. SHASKAN *v.* WALTHAM INDUSTRIES
CORPORATION ET AL.

SHAPIRO, LOISELLE, MACDONALD, BOGDANSKI and LONGO, Js.

44

Argued November 13, 1974—decision released February 25, 1975

*Samuel V. Schoonmaker III,* with whom was *Paul E. Knag,* for the defendant Chase Manhattan Bank.

*Gerald M. Fox, Jr.,* with whom was *Frank H. D'Andrea, Jr.,* and with whom, on the brief, were *Joseph Richichi* and *William Selsberg,* for the defendants Chemical Bank New York Trust Company, Franklin National Bank, and New England Merchants National Bank of Boston.

SHAPIRO, J. This is a foreclosure action brought by the holder of the first mortgage against various named defendants. After foreclosure by sale, and payment of the first mortgage and expenses of sale, the balance of the proceeds was held for distribution by the court below pending determination of priorities by this court.

The record discloses some pertinent facts and the parties stipulated as to certain other facts. The facts may be summarized as follows: On November 19, 1968, the defendant Waltham Industries Corpo-

ration (hereinafter Waltham) acting by its president, Frederick C. Rieck, mortgaged certain real property in Stamford to the plaintiff, George L. Shaskan (hereinafter Shaskan). On September 12, 1969, Waltham (now known as Waltham Resources Corporation) conveyed its equity in the premises to the defendants Frederick C. Rieck (hereinafter Mr. Rieck) and Joyce A. Rieck (hereinafter Mrs. Rieck) who assumed the mortgage given by Waltham to Shaskan. On February 26, 1970, the defendant Lee Bunting (hereinafter Bunting) placed an attachment against Mr. Rieck's interest in said realty. On May 15, 1970, the defendants Chemical Bank New York Trust Company (hereinafter Chemical), Franklin National Bank (hereinafter Franklin), and New England Merchants National Bank of Boston (hereinafter Merchants), each made attachments of Mr. Rieck's interest in the realty and simultaneously commenced actions against him. The aforesaid attachments were made in conformity with the requirements of Connecticut General Statutes § 52-279[1] "and other Connecticut law then in effect" and were made without prior notice, hearing, determination of probable cause, showing of special circumstances or court order, none of which was waived by Mr. Rieck.[2] The actions brought by Bunting, Chemical, Franklin, and Merchants resulted in valid and final judgments rendered on October 16, 1970, for Chemical, Franklin, and Merchants, and on October 6, 1972, for Bunting. In each case a valid judgment lien was duly recorded in the Stam-

---

[1] "[General Statutes] Sec. 52-279. WHEN ATTACHMENTS MAY BE GRANTED. Attachments may be granted upon all complaints containing a money demand against the estate of the defendant, both real and personal . . . ."

[2] See Public Act No. 73-431 entitled "An Act Concerning Pre-judgment Remedies."

ford land records within four months of the entry of judgment, and, as required by General Statutes § 49-44,[3] the judgment liens properly referred to the attachments. On June 10, 1970, the defendant Chase Manhattan Bank (hereinafter Chase), having actual notice of the aforesaid attachments against Mr. Rieck's interest in the realty, and in order to secure a pre-existing debt,[4] took from Mr. and Mrs. Rieck, as joint tenants, a second mortgage on their property, which was recorded on June 11, 1970.

. On October 13, 1972, Shaskan, who had brought an action for foreclosure of his first mortgage on the subject premises, obtained a judgment of foreclosure by sale which subsequently was modified as to the date of sale. The property was sold and the sale confirmed by the court. On July 27, 1973, by supplemental judgment, the remainder of the proceeds from the sale, after payment to Shaskan and payment of certain expenses incurred as a result of the sale, was ordered held in court pending further determination of priorities. The matter came to this court by a stipulation, signed by Shaskan, Chase, Chemical, Franklin, Merchants, Bunting and one Paul Stevens, for "the purpose of determining priorities between creditors of record," and to determine whether "the judgment liens filed against real estate . . . , which judgment liens were filed prior to May 30, 1973, relate back to the date of the real estate attachments made pursuant

---

[3] "[General Statutes] Sec. 49-44. RECORDING OF JUDGMENT LIEN. WHEN IT HOLDS FROM ATTACHMENT. . . . [I]f such lien is placed upon real estate attached in the suit upon which such judgment was predicated . . . , it shall hold from the date of such attachment . . . ."

[4] Other attachments were placed against Mr. Rieck's interest in the realty subsequent in time to the recited attachments, but their position as to priority is not relevant to the present case.

to the then existing law of Connecticut . . . ." The stipulation provides further that in the event the judgment liens relate back to the dates of the filing of the attachments, Chase is entitled to one-half of the remaining proceeds of the sale,[5] Bunting is entitled to satisfaction of his claim up to the amount of his attachment, and the remainder, under an agreement between them, to be divided among Chemical, Franklin and Merchants. In the event that the judgment liens do not relate back to the dates of the filing of the attachments, Chase would be entitled to the entire remaining proceeds of the sale.

Chase makes the claim that attachments made pursuant to § 52-279 are not constitutionally valid since the attachments against Mr. Rieck's interest in the realty were made without prior notice to him, affording him a hearing in court, a determination of probable cause or, in the alternative, a showing of special circumstances, and, further, that there was no waiver from Mr. Rieck as to such proceedings—all in violation of Mr. Rieck's due process rights under the fourteenth amendment to the United States constitution and article first of the Connecticut constitution. The further claim is made that the judgment liens prescribed by § 49-44 cannot relate back to such constitutionally defective attachments. The defendants Chemical, Franklin, and Merchants assert that Chase does not have standing to challenge the constitutionality of the present real estate attachments on the grounds that said attachments constitutionally affect Mr. Rieck's rights,

---

[5] The attachments do not relate in any way to Mrs. Rieck, and it has therefore been stipulated that Chase is entitled to receive her half of the remaining proceeds of the sale even if the judgment liens are held to relate back to the attachments.

because those attachments were made against a property interest owned by him, not by the defendant Chase; and that the attachments were made in actions separate and distinct from the present case and said attachments were reduced to valid judgment liens as already recited.

"Standing is an aspect of justiciability and, as such, the problem of standing is surrounded by the same complexities and vagaries that inhere in justiciability." *Flast* v. *Cohen,* 392 U.S. 83, 98, 88 S. Ct. 1942, 20 L. Ed. 2d 947. The constitutional question of standing is complex and has received the attention of the courts as well as of many academicians. Citing but a few—see *New Haven* v. *Public Utilities Commission,* 165 Conn. 687, 345 A.2d 563; also *Sierra Club* v. *Morton,* 405 U.S. 727, 92 S. Ct. 1361, 31 L. Ed. 2d 636; *Data Processing Service* v. *Camp,* 397 U.S. 150, 90 S. Ct. 827, 25 L. Ed. 2d 184; *Flast* v. *Cohen,* supra; *Baker* v. *Carr,* 369 U.S. 186, 82 S. Ct. 691, 7 L. Ed. 2d 663; *Poe* v. *Ullman,* 367 U.S. 497, 81 S. Ct. 1752, 6 L. Ed. 2d 989; *Tennessee Power Co.* v. *T. V. A.,* 306 U.S. 118, 59 S. Ct. 366, 83 L. Ed. 543; *Massachusetts* v. *Mellon,* 262 U.S. 447, 43 S. Ct. 597, 67 L. Ed. 1078; *Scenic Hudson Preservation Conference* v. *Federal Power Commission,* 354 F.2d 608 (2d Cir.), cert. denied, 384 U.S. 941, 86 S. Ct. 1492, 16 L. Ed. 2d 540; note, "Mootness and Ripeness: The Postman Always Rings Twice," 65 Colum. L. Rev. 867; Jaffe, "Standing Again," 84 Harv. L. Rev. 633; Lewis, "Constitutional Rights and the Misuse of 'Standing,' " 14 Stan. L. Rev. 433; Davis, "The Liberalized Law of Standing," 37 U. Chi. L. Rev. 450; Davis, "Standing: Taxpayers and Others," 35 U. Chi. L. Rev. 601.

In order for a party to challenge the constitutionality of a statute or an action predicated thereon

he must have standing. Standing focuses on whether that party is the proper party to request adjudication of the issues. *Flast* v. *Cohen,* supra, 99–100. A person cannot challenge the constitutionality of a statute unless he shows that he himself is injured by its operation. *Barrows* v. *Jackson,* 346 U.S. 249, 257, 73 S. Ct. 1031, 97 L. Ed. 2d 1586. The emphasis is on whether the party has "a personal stake in the outcome of the controversy"; *Baker* v. *Carr,* supra, 204; and whether the dispute touches upon "the legal relations of parties having adverse legal interests." *Aetna Life Ins. Co.* v. *Haworth,* 300 U.S. 227, 240, 57 S. Ct. 461, 81 L. Ed. 617. The general rule is that a litigant may only assert his own constitutional rights or immunities. *United States* v. *Raines,* 362 U.S. 17, 22, 80 S. Ct. 519, 4 L. Ed. 2d 524; see also *McGowan* v. *Maryland,* 366 U.S. 420, 81 S. Ct. 1101, 6 L. Ed. 2d 393; *N. A. A. C. P.* v. *Alabama,* 357 U.S. 449, 78 S. Ct. 1163, 2 L. Ed. 2d 1488; *Tileston* v. *Ullman,* 318 U.S. 44, 63 S. Ct. 493, 87 L. Ed. 2d 603.

Where a right arising from the federal constitution is alleged, the most restrictive rule of standing to be applied by this court will be the federal one. Under Connecticut standards also, Chase would not have the requisite standing. Only members of a class whose constitutional rights are endangered by a statute may ask to have it declared unconstitutional. *Connecticut Light & Power Co.* v. *Southbury,* 95 Conn. 242, 246, 111 A. 363. One who is not injured by the operation of a law cannot be said to be deprived by it of his constitutionally protected rights. *Hardware Mutual Casualty Co.* v. *Premo,* 153 Conn. 465, 470–71, 217 A.2d 698; *Coyle* v. *Housing Authority,* 151 Conn. 421, 424, 198 A.2d 709; *St. John's Roman Catholic Church Corporation* v.

*Darien,* 149 Conn. 712, 718, 184 A.2d 42; *Windsor* v. *Whitney,* 95 Conn. 357, 367, 111 A. 354. Aside from the mere question of standing, if his attack is to be successful, a litigant must sustain the burden of proving the facts essential to his standing, that is, that the effect or impact of the challenged statute on him adversely affects a constitutionally protected right which he has. This means a right which he proves that he has under the facts of his particular case. *Kellems* v. *Brown,* 163 Conn. 478, 483, 313 A.2d 53; *Hardware Mutual Casualty Co.* v. *Premo,* supra; *Karen* v. *East Haddam,* 146 Conn. 720, 727, 155 A.2d 921.

We find no authority, nor has Chase cited any, in which a creditor, like itself, has standing to attack the attachments and judgments predicated thereon by seeking to stand in Mr. Rieck's shoes. By pleading Mr. Rieck's cause, upon the claim that his constitutional rights are endangered, Chase cannot claim standing to contest the constitutionality of statutes involved. None of Chase's rights has been invaded. "Courts are instituted to give relief to parties whose rights have been invaded, and to give it at the instance of such parties; and a party whose rights have not been invaded cannot be heard to complain if the court refuses to act at his instance in righting the wrongs of another who seeks no redress." *Tyler* v. *Aspinwall,* 73 Conn. 493, 498, 47 A. 755.

We conclude that Chase has no standing to challenge the distribution of the proceeds and consequently the question reserved is not answered.

No costs will be taxed in this court in favor of any party.

In this opinion the other judges concurred.