## U.S.T. BANK/CONNECTICUT *v.* JAMES M. DAVENPORT ET AL.
### (AC 16978)

Spear, Dupont and Healey, Js.

Argued September 25, 1997—officially released January 20, 1998

*James M. Davenport,* pro se, the appellant (defendant), with whom, on the brief, was *James A. Curran.*

*Kara J. Lane,* for the appellee (plaintiff).

HEALEY, J. The named defendant, James M. Davenport,[1] appeals from the decision of the trial court denying his motion to set aside a deficiency judgment rendered in a foreclosure action in favor of the substitute plaintiff, Seymour, Inc.

The threshold issue is whether Seymour, Inc., had standing to move for a deficiency judgment after it had been replaced as the plaintiff and was no longer a party to the action. This is a question of fact regarding the corporation's standing that was not addressed by the trial court. We therefore remand this case to the trial court for a determination of whether the naming of the former plaintiff, rather than naming its corporate successor in interest, was a circumstantial defect.

The following facts are relevant to the disposition of this appeal. U.S.T. Bank/Connecticut (U.S.T. Bank) commenced a foreclosure action in May, 1994, alleging that the defendant failed to make payments on a note that was secured by a mortgage on his property in Bethel. The trial court, on August 31, 1994, granted U.S.T. Bank's motion for default against the defendant for failure to disclose a defense.

On March 6, 1995, the trial court granted U.S.T. Bank's motion to substitute Seymour, Inc. (Seymour), as the plaintiff. The motion recited that U.S.T. Bank had assigned the note and mortgage to Seymour on January 31, 1995.

---

[1] Subsequent encumbrancers were also named as defendants. We refer in this opinion to James M. Davenport as the defendant.

Thereafter, Seymour assigned the note and mortgage to JSA Financial Corporation (JSA) on August 28, 1995, and, on September 5, 1995, the trial court granted Seymour's motion to substitute JSA as the plaintiff. The defendant did not object to the substitutions.[2]

On September 5, 1995, the trial court ordered a foreclosure by sale and set a sale date of October 28, 1995. On November 28, 1995, the trial court approved the committee report of sale, the sale of the subject premises to JSA and the transfer of the deed to JSA.

Despite the trial court's September 5, 1995 ruling substituting JSA as the plaintiff in place of Seymour, on January 22, 1996, a motion for supplemental judgment and for deficiency judgment was filed by Seymour, indicating Seymour by name as the plaintiff and holder of interest in the mortgage and note.[3] On March 18, 1996, after a hearing in which the pro se defendant participated, the trial court granted the "plaintiff's motion for supplemental judgment and for deficiency judgment," and ordered that a deficiency judgment enter against the defendant. On May 13, 1996, the defendant filed an appeal from the deficiency judgment, which was dismissed by this court as untimely.

On July 3, 1996, the defendant filed a motion to open the deficiency judgment on the grounds (1) that "the

[2] U.S.T. Bank, Seymour and JSA were all represented before the trial court by the same law firm. Different counsel, however, represents the plaintiff mortgagee on this appeal.

[3] The motion stated in pertinent part: "The plaintiff, Seymour, Inc. (Plaintiff), respectfully requests that the Court enter a supplemental judgment in this matter (i) ratifying and confirming the sale of the subject property to Plaintiff, (ii) finding that the Plaintiff has a lien prior in right to the lien of all other defendants, and (iii) finding the amount of the debt and owing to Plaintiff. Plaintiff further moves that the Court make a finding and enter a deficiency judgment in favor of Plaintiff against the defendant, James M. Davenport (Defendant), based upon the bid price obtained for the subject property at the foreclosure sale." The motion was signed, "PLAINTIFF, SEYMOUR, INC."

plaintiff" has not met the standards of commercial rea-
sonableness and (2) that the deficiency judgment had
been calculated incorrectly. The trial court denied the
motion on August 26, 1996.

On December 24, 1996, the defendant filed a motion
to set aside the deficiency judgment. The defendant
claimed that Seymour had no standing to move for the
deficiency judgment and, therefore, the judgment was
void for lack of jurisdiction. JSA objected to this motion.
Following a hearing,[4] the trial court denied the defen-
dant's motion on February 10, 1997.[5]

The defendant appeals from the denial of his motion
to set aside the deficiency judgment and claims that
the trial court improperly (1) granted a motion for defi-
ciency filed by a plaintiff that no longer had any standing
before the court, (2) denied his motion to set aside by
imposing the four month rule of Practice Book § 326,
and (3) granted the deficiency judgment absent a dem-
onstration of commercial reasonableness.

At the outset, this court is confronted with a challenge
to the jurisdiction of the trial court to hear the plaintiff's
motion. "Whenever the absence of jurisdiction is

[4] No transcript of that hearing has been made available to this court. It
appears, however, that the pro se defendant was present and participated
in that hearing.

[5] In denying this motion, the trial court stated in the file that "on 2/10/
97 the court entered [the] following on [plaintiff] JSA Financial Corp.'s
[objection] to motion to set aside judgment: Sustained. See [Practice
Book] § 26."

Practice Book § 326 provides: "Unless otherwise provided by law and
except in such cases in which the court has continuing jurisdiction, any
civil judgment or decree rendered in the superior court may not be opened
or set aside unless a motion to open or set aside is filed within four months
of the entry of judgment. The parties may waive the provisions of this
paragraph or otherwise submit to the jurisdiction of the court.

"Upon the filing of a motion to open or set aside a civil judgment, except
a judgment in a small claims or juvenile matter, the moving party shall pay
to the clerk the filing fee prescribed by statute unless such fee has been
waived by the court."

brought to the notice of the court or tribunal, cognizance of it must be taken and the matter passed upon before it can move one further step in the cause; as any movement is necessarily the exercise of jurisdiction." (Internal quotation marks omitted.) *Second Injury Fund* v. *Lupachino,* 45 Conn. App. 324, 330, 695 A.2d 1072 (1997). "Standing goes to the court's subject matter jurisdiction." *Stroiney* v. *Crescent Lake Tax District,* 205 Conn. 290, 294, 533 A.2d 208 (1987); *Reitzer* v. *Board of Trustees of State Colleges,* 2 Conn. App. 196, 201, 477 A.2d 129 (1984); *Housing Authority* v. *Local 1161,* 1 Conn. App. 154, 157, 468 A.2d 1251, cert. denied, 192 Conn. 802, 471 A.2d 244 (1984). We, therefore, must address this issue of standing before we can proceed to the other claims before us.

In its brief, as well as in oral argument before this court, the plaintiff on appeal refers to the naming of Seymour as a "typographical error on the pleading which mistakenly referred to Seymour as the plaintiff." The plaintiff suggests that this is a circumstantial defect within the purview of § 52-123,[6] which in no way prejudiced the defendant. Therefore, the plaintiff maintains that, given the nature of the circumstantial defect, JSA had standing to move for and to obtain the deficiency judgment. We conclude that the trial court should have decided whether the naming of the former party (Seymour) was a circumstantial defect.

" 'Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless [one] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in

---

[6] General Statutes § 52-123 provides: "No writ, pleading, judgment or any kind of proceeding in court or course of justice shall be abated, suspended, set aside or reversed for any kind of circumstantial errors, mistakes or defects, if the person and the cause may be rightly understood and intended by the court."

the subject matter of the controversy.' *Ardmare Construction Co.* v. *Freedman*, 191 Conn. 497, 501, 467 A.2d 674 (1983)." *Tomlinson* v. *Board of Education*, 226 Conn. 704, 717–18, 629 A.2d 333 (1993). Our Supreme Court has said that "[s]tanding focuses on whether the party initiating the action is the proper party to request adjudication of the issues." *Stamford Hospital* v. *Vega*, 236 Conn. 646, 657, 674 A.2d 821 (1996). The objectives of standing are "held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity." (Internal quotation marks omitted.) *Weidenbacher* v. *Duclos*, 234 Conn. 51, 62, 661 A.2d 988 (1995). "Such a 'personal stake in the outcome of the controversy'; *Shaskan* v. *Waltham Industries Corporation*, 168 Conn. 43, 49, 357 A.2d 472 (1975) . . . provides the requisite assurance of 'concrete adverseness' and diligent advocacy." (Citation omitted.) *Maloney* v. *Pac*, 183 Conn. 313, 321, 439 A.2d 349 (1981).

Here, the issue of standing is raised because the motion for deficiency was brought by "the plaintiff, Seymour, Inc.," which was, on the record before us, neither the plaintiff nor even a party to the action at the time the motion was filed. The question then becomes whether the naming of Seymour as the plaintiff on the motion was a circumstantial defect. If there was a circumstantial defect, the trial court could have so found and properly proceeded to rule on the motion for the deficiency judgment.

The problem that presently faces this court, however, is that the trial court never made any finding as to whether the naming of Seymour was a "circumstantial defect." Such a finding would have to have been based on facts that are not part of the record before us.[7] While

---

[7] At oral argument before this court, JSA's attorney said, "The plaintiff of record was JSA Financial. The same attorney who represented Seymour

cases involving circumstantial defects have turned on incorrect defendants, incorrect dates, incorrect statutes, incorrect acronyms, incorrect dollar amounts and the like, we are unaware of any case in which an appellate court in this jurisdiction has had to decide the question of the consequences of a deficiency judgment that was sought and granted at the instance of a plaintiff in whose stead, and by court order, another plaintiff was later substituted and who became the plaintiff of record. The factual circumstances concerning the claimed defect, be they sufficient to support a finding of typographical error or word processor mistake, remain to be decided by the trial court.

The case is remanded for further proceedings to determine whether a "circumstantial defect" as claimed did in fact exist; in the event that the trial court finds that there was a circumstantial defect, and no timely appeal is taken from that determination, the judgment is affirmed; in the event that the trial court finds that there was no circumstantial defect, the judgment is reversed and the trial court is directed to render judgment denying the motion for a deficiency judgment.

In this opinion the other judges concurred.

---

represented JSA Financial at that time. . . . The same attorney who represented UST Bank represented JSA Financial. They moved for a deficiency judgment and, although the motion did make reference to Seymour, Inc., at the hearing at the deficiency judgment there was a vice president of JSA Financial who testified . . . . It was clear that JSA Financial was the plaintiff of interest and was the plaintiff who was moving for the deficiency judgment. The court entered the deficiency judgment for the plaintiff, not on the basis of Seymour, Inc. . . . I think it's a word processor mistake."

As noted, there is no transcript before us of the proceeding in the trial court at which the challenged deficiency judgment was entered.