[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION MOTION TO DISSOLVE SOTAVENTO CORPORATION'S PREJUDGMENT REMEDY
The present action was initially commenced by Security Mutual Life Insurance Company of New York (Security Mutual). Security Mutual sought to foreclose a first mortgage granted it by Kings West Limited Partnership (KWLP). As part of its foreclosure action, Security Mutual requested the appointment of a receiver of rents. On June 7, 1996, the court (Grogins, J.) appointed CB Commercial/Hampshire, LLC (CB Commercial) as receiver of rents for the property on which Security Mutual sought to foreclose.
On April 4, 1997, Security Mutual requested that the court discharge the receiver as "unnecessary" due to the fact that the subject property had been sold to a third party (Marsilio Enterprises) and the default on which Security Mutual had initiated the action had been cured. By order dated April 7, 1997, the court (Rush, J.) granted the request and discharged the receiver. A hearing on the final accounting of the receiver was held on November 5 and 7, 1997 (Saden, J.T.R.).
On June 24, 1997, Sotavento Corp.[1] filed a cross-claim against KWLP and Kings West, the general partner of KWLP. Simultaneously, Sotavento filed a notice of application for a prejudgment remedy against KWLP in the amount of $100,000. As part of the prejudgment remedy, Sotavento garnished CB Commercial, the court-appointed receiver in the Security Mutual action, who allegedly was in control of funds belonging to KWLP.
On February 27, 1998, KWLP filed a motion to dissolve the prejudgment remedy of Sotavento. Sotavento filed a memorandum in opposition to the motion to vacate the prejudgment remedy on March 2, 1998. Sotavento then filed a supplemental memorandum in opposition on March 9, 1998.
 DISCUSSION CT Page 9903
KWLP advances two alternative grounds on which the court should dissolve the prejudgment remedy. KWLP's first ground is that Sotavento improperly garnished the receiver of rents. According to KWLP, the receiver, as an arm of the court, is not properly subject to any sort of garnishment and thus, Sotavento's prejudgment remedy should be dissolved on grounds of public policy. In the alternative, KWLP argues that there is no need for the prejudgment remedy. As Sotavento is secured by a second mortgage on the property in question, KWLP argues that the outstanding prejudgment remedy exceeds the amount of security to which Sotavento is allowed, especially as there is very little likelihood of a deficiency judgment.
Sotavento objects and offers several arguments why the prejudgment remedy should remain in effect. For one, Sotavento argues that KWLP lacks standing to challenge the garnishment. In rebuttal of KWLP's argument, Sotavento points out that garnishment of the receiver occurred after the discharge of CB Commercial. As such, Sotavento contends that CB Commercial was no longer operating as an arm of the court, but rather an agent of KWLP. Furthermore, Sotavento argues that because of the uncertain status of its mortgage on the property in question, the prejudgment remedy is essential in protecting Sotavento's assets as KWLP is allegedly awaiting dissolution.
 1. Standing
"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless [one] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . ." Citations omitted; internal quotation marks omitted.) U.S.T. Bank/Connecticut v. Davenport,47 Conn. App. 459, 463, (1998). "Standing focuses on whether the party initiating the action is the proper party to request adjudication of the issues. . . The objectives of standing are held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. . . Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy." (Citations omitted; internal quotation marks omitted.) Id.
CT Page 9904
Sotavento argues that KWLP cannot act on its own in asking the court to vacate the prejudgment remedy. Sotavento points out that the KWLP limited partnership agreement does not provide for KWLP to act in its own name other than by or through its corporate general partner, Kings West. As Kings West has not joined in the present motion, Sotavento maintains that KWLP has no standing to challenge the prejudgment remedy.
The court concludes that KWLP does have standing to move to dissolve the prejudgment remedy. KWLP is a named defendant in the original action and a cross-claim defendant in the underlying action brought by Sotavento. On the notice for application for the prejudgment remedy, KWLP is listed as the main defendant, against whom the prejudgment remedy is being sought. General Statutes § 52-278d provides that "[t]he defendant shall have the right to appear and be heard at the hearing" on the prejudgment remedy. At least one court has interpreted this provision to mean that a defendant, even one without a direct interest in the assets that has been garnished, has standing to move to dissolve the attachment. See OfficeRelocation Management v. Lee, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 702339 6 CONN. L. RPTR. 614 (February 18, 1992, Burns, J.) (defendant has standing to challenge a prejudgment remedy attaching property held by other defendant).
As KWLP is a party with a direct interest in the attached property, it has standing to move to vacate the prejudgment remedy. The language of the limited partnership agreement gives the general partner a broad array of powers. These powers, which are very general, do not constitute an explicit waiver of KWLP's right to challenge a prejudgment remedy that attaches property of KWLP in an action in which KWLP is a named defendant.
 2. Whether a receivership may be garnished.
In Connecticut, it is a well-established principle that "public officers, who are bound to transact the public business by certain rules, and in certain forms, shall not be exposed to the expense, the inconvenience and hazard incident to the process" of attachment and garnishment. (Internal quotations omitted.) Lewis v. Hopkins, 96 Conn. 356, 358,114 A. 91 (1921) (prosecutor holding bail bond may not be garnished); see also Stillman v. Isham, 11 Conn. 124, 127 (1835) (a state's attorney holding money for injured party in capacity CT Page 9905 as agent of the public could not be garnished by creditor of the injured party prior to demand by the injured party). An exception to this principle seems to exist where the executor of an attachment holds the funds for the account of the creditor. See New Haven Saw-Mill Co. v. Fowler, 28 Conn. 103, 110
(1859) ("but where the sheriff takes the execution from the creditor, and acts under his instructions, and is directly accountable to him, we see no good reason why he should not be treated in law, as he undoubtedly is in fact, as his agent and trustee").
While receivers are usually not public officers;Citizens' Commercial Savings Bank v. Bay CircuitJudge, 68 N.W. 649 (1896); receivers are considered to be an "arm of the court." Hartford Federal Savings LoanAssn. v. Tucker, 196 Conn. 172, 178, 491 A.2d 1088, cert. denied, 474 U.S. 920 (1985). Thus, as a general rule, property in the hands of a receiver is not subject to attachment or garnishment except by leave of the court appointing the receiver. 6 Am.Jur.2d, Attachment Garnishment, § 209 (1963) ("the possession of the receiver is deemed the possession of the court and is entitled to the protection of the rule that property in custodia legis is not attachable or garnishable"). "The right of a creditor to sequester a portion of the debtor's property by attachment, and thereby gain priority over other creditors, is suspended by the appointment of a receiver. That officer, as the agent of the law, takes from the debtor's possession all his property for division among all creditors in equal proportions. . . [W]hatever right any creditor could have enforced for his sole advantage, the law will enforce for him and for all others in equal proportions." New Haven Wire Co.Cases, 57 Conn. 352, 387-88, 18 A. 266 (1889). However, as with public officers, "a receiver may be garnished for any balance remaining in his hands after the execution of the trust and the satisfaction of liens on the property held by him, where nothing remains to be done except to pay the money upon a final order or decree of distribution." 6 Am.Jur.2d, Attachment Garnishment, § 209 (1963).
The garnishment of the receiver in the present case does not fall within any of the exceptions to the rule that garnishment of a public officer or arm of the court is improper. The receivership was discharged by the court, Rush, J., in April of 1997. The garnishment of the receiver took place in June, 1997, subsequent to the discharge. Although the receiver was CT Page 9906 discharged from its duties as receiver of rents, the receiver was still acting as an arm of the court in that a final accounting had yet to occur.[2] While discharged from collecting any future rents, the receiver was not discharged from all of its obligations until November of 1997, when the final accounting took place before the court, Saden, J.T.R. Until that time, the receiver was still a court-appointed entity that continued to be responsible to the court. Until the time of the final accounting, the receiver could not have been garnished because it continued to hold funds solely due to the fact that the court had previously given the receiver the power to do so.[3]
Accordingly, the motion to dissolve the prejudgment remedy is granted.
DAVID W. SKOLNICK, JUDGE