MARY MALONEY *v.* STANLEY J. PAC ET AL.

BOGDANSKI, PETERS, HEALEY, ARMENTANO and WRIGHT, Js.

---

314

Argued December 12, 1980—decision released March 17, 1981

*James A. Wade,* for the appellant (defendant Legislative Regulation Review Committee).

*Christopher M. Royston,* with whom, on the brief, was *Robert N. Wienner,* for the appellant (defendant Balf Company).

*Frank Rogers,* assistant attorney general, for the appellees (named defendant et al.).

*Pamela R. Hershinson,* with whom was *Robert B. Shapiro,* for the appellee (plaintiff).

*Alexander A. Goldfarb,* corporation counsel, and *James F. Meehan,* special assistant corporation counsel, with whom on the brief, were *Dennis L. Pieragostini* and *James J. Szerejko,* assistant corporation counsels, and *Paula Zeiner,* for the appellee (defendant city of Hartford).

PETERS, J. This is an appeal from a judgment that General Statutes § 4-170,[1] permitting the legislature to veto administrative regulations, is unconstitutional. The plaintiff, Mary Maloney, brought an action against the state traffic commission and its

[1] General Statutes § 4-170 provides, in pertinent part: "LEGISLATIVE REGULATION REVIEW COMMITTEE. FILING REQUIREMENTS FOR REGULATIONS. . . . (a) There shall be a standing legislative committee to review all regulations of the several state departments and agencies following the proposal thereof . . . . (b) No adoption, amendment or repeal of any regulation, except a regulation issued pursuant to subsection (b) of section 4-168, shall be effective until . . . such regulation has been approved by the committee . . . and filed in the office of the secretary of the state by the agency, as provided in section 4-172. . . . (c) The committee shall review all proposed regulations and, in its discretion, may hold public hearings thereon, and may approve, disapprove or reject without prejudice, in whole or in part, any such regulation. . . . In the event the committee disapproves a proposed regulation in whole or in part, it shall give notice of such disapproval and the reasons for the disapproval, to the agency, and no agency shall thereafter issue any regulation or directive or take other action to implement such disapproved regulation or part thereof . . . provided . . . the general assembly may reverse such disapproval under the provisions of section 4-171. . . . If an agency fails to file any regulation approved in whole or in part by the standing regulations review committee in the office of the secretary of the state as provided in section 4-172, within fourteen days after the date of approval, such agency shall notify the committee, within five days after such fourteen-day period, of its reasons for not so filing."

members, and the city of Hartford and its acting city manager, seeking declaratory and injunctive relief from the legislative veto of action taken by the state traffic commission. The Legislative Regulation Review Committee of the legislature (LRRC) and the Balf Company were added as defendants by order of the trial court. The defendant city of Hartford cross claimed against the state traffic commission and the LRRC. From a judgment for the plaintiff on her complaint and for the city of Hartford on the cross claim the LRRC and the Balf Company have appealed.[2]

This litigation arises out of traffic problems on parts of two streets in the city of Hartford. In early 1976 the state traffic commission, acting pursuant to General Statutes § 14-298,[3] adopted[4]

---

[2] The defendant city of Hartford, which prevailed on its cross complaint against the other defendants, does not here appeal the judgment of the trial court. Rather, it urges affirmance of the decision below.

The defendant members of the state traffic commission and the state traffic commission have not appealed.

[3] General Statutes § 14-298 provides: "STATE TRAFFIC COMMISSION. There shall be within the department of transportation a state traffic commission. Said traffic commission shall consist of the commissioner of transportation, the commissioner of public safety and the commissioner of motor vehicles. For the purpose of standardization and uniformity, said commission shall adopt and cause to be printed for publication regulations establishing a uniform system of traffic control signals, devices, signs and markings consistent with the provisions of this chapter for use upon the public highways. Taking into consideration the public safety and convenience with respect to the width and character of the highways and roads affected, the density of traffic thereon and the character of such traffic, said commission shall also adopt regulations, in cooperation and agreement with local traffic authorities, governing the use of state highways and roads on state-owned properties, and the operation of vehicles including but not limited to motor vehicles, as defined by subsection (26) of section 14-1, and bicycles, as defined by section 14-286, thereon. A list of limited-access highways shall be published with such regulations and said list shall be revised and published once each year. A

§ 14-298-270 of its regulations, prohibiting through truck traffic on Stone and Brookfield Streets between Flatbush and New Britain Avenues in Hartford. This action had been requested by the city manager of Hartford, who is, under the Hartford charter, the traffic authority of that city. His request, in turn, was the result of complaints by residents of Stone Street of heavy truck traffic and resulting noise, pollution, and safety hazards.

Pursuant to General Statutes § 4-170, this traffic regulation was then submitted to the Legislative

list of limited-access highways opened to traffic by the commissioner of transportation in the interim period between publications shall be maintained in the office of the state traffic commission and such regulations shall apply to the use of such listed highways. Said commission shall also make regulations, in cooperation and agreement with local traffic authorities, respecting the use by through truck traffic of streets and highways within the limits of, and under the jurisdiction of, any city, town or borough of this state for the protection and safety of the public. Said commission may place and maintain traffic control signals, signs, markings and other safety devices, which it deems to be in the interests of public safety, upon such highways as come within the jurisdiction of said commission as set forth in section 14-297. The traffic authority of any city, town or borough may place and maintain traffic control signals, signs, markings and other safety devices upon the highways under its jurisdiction, and all such signals, devices, and markings shall conform to the regulations established by said commission in accordance with this chapter, and such traffic authority shall, with respect to traffic control signals, conform to the provisions of section 14-299."

⁴ This was a readoption, to cure procedural irregularities which may have existed in the July, 1975, adoption of a functionally equivalent regulation.

The readoption was prompted by an earlier suit for declaratory injunctive relief in which the Balf Company, a defendant in the present litigation, sought to enjoin enforcement of this regulation's predecessor. In response to a motion to erase in the earlier suit, the trial court, *Covello, J.*, concluded that the state traffic commission was obligated to comply with the procedures specified in the Uniform Administrative Procedure Act before it could validly promulgate its traffic regulation. No appeal was taken from Judge Covello's ruling because of the commission's decision to comply with that act in that respect.

Regulation Review Committee (LRRC), a joint committee of the General Assembly consisting of eight representatives and six senators, for review. On April 20, 1976, that committee disapproved the regulation as "in conflict with the original intention of the law" because it was based upon traffic engineering reports prepared by the city of Hartford rather than by the state department of transportation. The regulation was never formally rescinded but the state traffic commission forwarded to the acting city manager of Hartford a copy of the LRRC's statement of disapproval on May 18, 1976. Signs which forbade through truck traffic on Stone and Brookfield Streets, and had been posted after the July, 1975, action of the state traffic commission, were thereafter removed.

The plaintiff, Mary Maloney, a resident of the immediate vicinity of Stone Street, thereupon brought this action for declaratory and injunctive relief, alleging her own injury due to vibration, dust, noise, fumes, and gravel from the trucks which, the trial court found, used the Stone-Brookfield Streets route before the regulation was adopted and after the signs were removed but not while trucks were banned therefrom. She alleged that General Statutes § 4-170 violates both the federal and state constitutions and that the removal of the signs was therefore illegal; she sought a judicial declaration of the unconstitutionality of General Statutes § 4-170 and an injunction requiring the replacement of the signs.

In its consideration of the issues presented, the trial court, *O'Brien, J.*, was bound by the earlier determination of the Superior Court, *Covello, J.*, that the traffic regulation adopted was a regulation

within the meaning of General Statutes § 4-170 and thus subject to review by the LRRC.[5] *State* v. *Deep,* 181 Conn. 284, 435 A.2d 333 (1980). Thus the issue of the statute's constitutionality was squarely presented at trial. After trial, the court held General Statutes § 4-170 unconstitutional and rendered judgment for the plaintiff, and for the city of Hartford on its cross claim. The court thereupon enjoined the state traffic commission to resume the action that it had undertaken prior to the legislative veto by the LRRC. The LRRC and the Balf Company have appealed.

On this appeal the appellants attack the trial court's conclusions: (1) that the plaintiff has standing to bring this action, (2) that a justiciable question is presented, and (3) that the action taken by the LRRC pursuant to § 4-170 violates the federal and state constitutions. The appellee city of Hartford joins the plaintiff in urging that the trial court's judgment be affirmed, but on an alternative ground. The city argues that the constitutional question need not be reached because the action taken by the state traffic commission is not a regulation under the Uniform Administrative Procedure Act; General Statutes §§ 4-166 to 4-189; and therefore is not subject to the disapproval of the LRRC.

## I

We address first the question of the plaintiff's standing to maintain this action. The plaintiff alleged in her complaint that she had suffered direct injury from the removal of the signs. She cited: the breakage of windows by vibration; deterioration of furnishings by dust; disturbance of sleep, peace and

---

[5] See footnote 4.

quiet, and health by noise; hindrance of breathing by fumes and dust; and a hazard from gravel and concomitant street deterioration. She alleged that these conditions constituted a nuisance that would continue absent the injunctive relief she sought. The trial court found that she had in fact suffered personal injury from the noise and vibration of the trucks.

The defendants challenge the trial court's holding that the plaintiff has standing to maintain this action by emphasizing that the court also found that the plaintiff had standing because of injuries which were aesthetic, conservational, or recreational. We need not now decide whether the court was correct in viewing *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 400 A.2d 726 (1978), which relied upon statutory standing, as equally supporting common-law standing for such injuries. For this case it is sufficient to note the trial court's unchallenged finding of personal injury "from the noise and vibration of the trucks." We need only determine whether this direct personal injury to the plaintiff is sufficient to support the trial court's conclusion that she has standing to challenge the constitutionality of the statute involved.

Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. See, e.g., *Baker* v. *Carr,* 369 U.S. 186, 204, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962); *Stern* v. *Stern,*

165 Conn. 190, 192, 332 A.2d 78 (1973). These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity.[6] Such a "personal stake in the outcome of the controversy"; *Shaskan* v. *Waltham Industries Corporation,* 168 Conn. 43, 49, 357 A.2d 472 (1975); *Baker* v. *Carr,* supra, 204; provides the requisite assurance of "concrete adverseness" and diligent advocacy.

As long as there is some direct injury for which the plaintiff seeks redress, the injury that is alleged need not be great. We have held that standing existed although the injury alleged was "extremely small." *Bassett* v. *Desmond,* 140 Conn. 426, 432, 101 A.2d 294 (1953); *Beard's Appeal,* 64 Conn. 526, 534, 30 A. 775 (1894). The injury need not be primarily economic. In nuisance cases, we have held it sufficient for the plaintiffs to allege annoyance, discomfort, inconvenience, loss of enjoyment, unpleasant sights and odors, and a loss of sleep due to such odors. *Filisko* v. *Bridgeport Hydraulic Co.,* 176 Conn. 33, 404 A.2d 889 (1978). The fear of possible future criminal activity has been held sufficient to permit litigation of the question whether a residence for former criminals constituted a nuisance. *Nicholson* v. *Connecticut Half-Way House, Inc.,* 153 Conn. 507, 218 A.2d 383 (1966). A genuine likeli-

---

[6] We emphasize that the question of standing is not an inquiry into the merits. Standing is not shown never to have existed when a plaintiff loses his suit. Standing requires no more than a colorable claim of injury; a plaintiff ordinarily establishes his standing by *allegations* of injury. Similarly, standing exists to attempt to vindicate "arguably" protected interests. *Ducharme* v. *Putnam,* 161 Conn. 135, 139, 285 A.2d 318 (1971); see also *Assn. of Data Processing Service Organizations* v. *Camp,* 397 U.S. 150, 90 S. Ct. 827, 25 L. Ed. 2d 184 (1970).

hood of civil incarceration would confer standing. See *Kuser* v. *Orkis,* 169 Conn. 66, 73, 362 A.2d 943 (1975) (dictum). Of course, there must be a logical nexus between the injury and the claim sought to be adjudicated. See *Flast* v. *Cohen,* 392 U.S. 83, 102, 88 S. Ct. 1942, 20 L. Ed. 2d 947 (1968). That, however, is not the basis of the defendants' attack upon the trial court's conclusion that the plaintiff has standing, nor could it be where the connection between the injury alleged and the claimed illegal action is obvious and direct.

We therefore find no error in the determination that the present plaintiff has standing to challenge the legality of the action taken by the LRRC. Her personal injury gave her a sufficiently direct interest, under the facts of her particular case, to remove this litigation from the impermissible realm of general speculation about unproven hypothetical situations. *Stern* v. *Stern,* supra; *Adams* v. *Rubinow,* 157 Conn. 150, 152–53, 251 A.2d 49 (1968); *Hardware Mutual Casualty Co.* v. *Premo,* 153 Conn. 465, 470–71, 217 A.2d 698 (1966).

## II

The LRRC claims that this court may not decide the constitutional question presented because the issue is political in nature and thus nonjusticiable. The LRRC does not deny that courts have the power to decide whether or not a legislature has transgressed the separation of powers mandated by the constitution. Rather, it is argued that the present case is nonjusticiable because the regulation at issue has no legally cognizable existence, having never been filed with the Secretary of State, as required by General Statutes § 4-172. Such filing has not

occurred, in this case, because the legislated precondition to executive filing, the approval of the regulation by LRRC, has not been met. LRRC claims furthermore that the plaintiff is asking the court to supersede the discretionary judgment of the state traffic commission with regard to the allocation of traffic flow.

This limited claim of nonjusticiability by the LRRC would not rebut the plaintiff's underlying request for declaratory relief. As we noted in *Horton* v. *Meskill,* 172 Conn. 615, 626–27, 376 A.2d 359 (1977), an action for a declaratory judgment is a particularly appropriate vehicle for litigating otherwise justiciable constitutional issues. It is true that the plaintiff also sought ancillary injunctive relief, an injunction ordering the state traffic commission to post, in accordance with state traffic regulation § 14-298-270, the "No Thru Truck" signs that had been taken down because of the LRRC veto. In light of our interpretation of the relationship between the traffic regulation and the operative provisions of General Statutes § 4-170, and hence of § 4-172; see infra; we need only address the claim that this prayer for injunctive relief treads on the discretionary power of the state traffic commission. We agree with the plaintiff that the record before us is inconsistent with the claim that the state traffic commission was exercising its discretionary judgment about traffic flow when it took down the disputed signs. There is not a scintilla of evidence that the action of the state traffic commission resulted from its reexamination of traffic patterns or its reassessment of the costs and benefits of these patterns. On the contrary, the state traffic commission acted solely in response to the LRRC veto of its traffic regulation. It has not appealed from the

judgment of the trial court declaring that veto unconstitutional. We do not construe the injunction issued by the trial court to interfere with the prerogatives of the state traffic commission to respond to altered traffic conditions when, as, and if they arise.

## III

The final and most important claim of error challenges the conclusion of the trial court that the LRRC's disapproval of the "No Thru Trucks" limitation on traffic upon Hartford's Stone and Brookfield Streets was unconstitutional because it violated the doctrine of separation of powers incorporated in article second of the Connecticut constitution. Before we reach that issue, we must examine any statutory claim that might enable us to dispose effectively of the present controversy without adjudicating so difficult and sensitive a constitutional issue. *State* v. *Gold,* 180 Conn. 619, 639, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980); *Negron* v. *Warden,* 180 Conn. 153, 166, 429 A.2d 841 (1980); *Pepin* v. *Danbury,* 171 Conn. 74, 88, 368 A.2d 88 (1976). See *Ashwander* v. *Tennessee Valley Authority,* 297 U.S. 288, 347, 56 S. Ct. 466, 80 L. Ed. 688 (Brandeis, J., concurring), reh. denied, 297 U.S. 728, 56 S. Ct. 588, 80 L. Ed. 1011 (1936); Bickel, The Least Dangerous Branch: The Supreme Court at the Bar of Politics (1962) pp. 169–83; Tribe, American Constitutional Law (1978) § 3-8, pp. 55–56. It is undisputed that the legislative action whose constitutionality is at issue here was predicated solely upon the power conferred upon, or retained by, the legislature in General Statutes § 4-170. This section is a part of our Uniform Administrative Procedure Act, General Statutes §§ 4-166 to 4-189. Unless the Uniform

Administrative Procedure Act applies to the present controversy, the legislature lacked statutory power, as distinguished from constitutional power, to overturn the action taken by the state traffic commission. Since we conclude that the Uniform Administrative Procedure Act was not applicable, and that there was thus no statutory occasion for the legislative veto, we need not determine the constitutional question.[7]

The determinative question before us, with reference to statutory power, is whether the action taken by the state traffic commission is a "regulation" as that term is defined by the Uniform Administrative Procedure Act. Concededly, § 4-170, in terms, confers upon the legislature the power to veto "regulations of the several state departments and agencies." "Regulation" is defined by § 4-166 (7) as an "agency statement of general applicability . . . that . . . prescribes law or policy . . . ." Does a traffic regulation prohibiting through truck traffic on designated parts of two designated city streets meet this standard? We hold that it does not.

The criteria that determine whether administrative action is a "regulation" are neither linguistic nor formalistic. It is not conclusive that an agency has, or has not, denominated its action a "regulation" or that it has, or has not, promulgated it procedurally in the fashion that would be required of a "regulation." *Lewis-Mota* v. *Secretary of Labor,*

[7] We note that the trial court, *O'Brien, J.,* was forced to confront the constitutional question directly because that court was bound by the earlier determination of Judge Covello holding the Uniform Administrative Procedure Act to be applicable. See footnote 4, supra. This aspect of the case was not, and could not have been, reargued before Judge O'Brien. See *State* v. *Deep,* 181 Conn. 284, 435 A.2d 333 (1980).

469 F.2d 478, 481–82 (2d Cir. 1972); *Salmon Brook Convalescent Home, Inc.* v. *Commission on Hospitals & Health Care,* 177 Conn. 356, 362, 417 A.2d 358 (1979). See also *Greenwich* v. *Connecticut Transportation Authority,* 166 Conn. 337, 345, 348 A.2d 596 (1974).[8] The test is, rather, whether "a rule has a substantial impact on the rights and obligations of parties who may appear before the agency in the future." *Salmon Brook Convalescent Home, Inc.,* supra, 362. Implicit in this formulation is the recognition that a regulation must be a rule of sufficient generality to impinge substantially on others who will deal with the agency at a future time.

The requirement of § 4-166 (7) that a regulation must be an agency statement "of general applicability" is particularly significant when our statute is compared with other similar legislation. The Connecticut Uniform Administrative Procedure Act is largely based upon the Model State Administrative Procedure Act recommended by the National Conference of Commissioners on Uniform State Laws. The model act, like our statute, defines operative agency action in terms of statements "of general applicability."[9] The federal Administrative Procedure Act, by contrast, refers to agency statements "of general or particular applicability." 5 U.S.C. § 551 (4) (1970). The Commissioners on Uniform State Laws, in commenting on the model act, point out that its omission of the words "or particular"

[8] No inference can be drawn from the fact that the state traffic commission purported to issue a "regulation" pursuant to General Statutes § 14-298, since the statute antedated enactment of the Uniform Administrative Procedure Act.

[9] Model State Administrative Procedure Act (U.L.A.) § 1 (7). The model act differs from our statute in denominating a "rule" what our statute denominates a "regulation."

has the effect of "limiting its scope but clarifying its meaning." 14 U.L.A., p. 373 (1980). The commissioners further note that "rules, like statutory provisions, may be of 'general applicability' even though they may be of immediate concern to only a single person or corporation, provided the form is general and others who may qualify in the future will fall within its provisions." Ibid. See *Citizens for Sensible Zoning, Inc.* v. *Department of National Resources, Columbia County,* 90 Wis. 2d 804, 815–16, 280 N.W.2d 702 (1979); 1 Cooper, State Administrative Law (1965) p. 108; Schwartz, Administrative Law (1976) pp. 144–46; but compare 2 Davis, Administrative Law (1979) §§ 7.3 and 7.17.

Measured by these criteria, the traffic regulation barring through trucks on parts of Stone and Brookfield Streets in Hartford does not have a sufficient impact of sufficient generality to qualify as a "regulation" for the purposes of the Uniform Administrative Procedure Act. The range and effect of this limited traffic control statement is a far cry from such regulations as fare increases for all Connecticut Transit operations in the Hartford, New Haven and Stamford regions; *Hartford* v. *Powers,* 183 Conn. 76, 81, 438 A.2d 824 (1981); and guidelines governing all Connecticut nursing home fees. *Salmon Brook Convalescent Home, Inc.* v. *Commission on Hospitals & Health Care,* supra. The only way in which this traffic control regulation is "general" is that, within its narrow geographical confines, it governs all through trucks, and not only those of the Balf Company. To call that "general" would be to emasculate the distinction between general and particular rulemaking that our legislators intended to retain.

Our conclusion that the Uniform Administrative Procedure Act is inapplicable here is supported, further, by the text of General Statutes § 14-298, the section which authorizes and empowers the state traffic commission to promulgate traffic regulations. Such traffic regulations may be of at least two distinct types. Those adopted "[f]or the purpose of standardization and uniformity," which shall be "printed for publication" are regulations which, at least presumptively, ought to be viewed as "of general applicability." But the mandate of the state traffic commission is broader: "Taking into consideration the public safety and convenience with respect to the width *and character* of *the* highways and roads affected, the density . . . and the character of [the] traffic [thereon], said commission *shall also* adopt regulations, in cooperation and agreement with local traffic authorities, governing the use of state highways . . . and the operation of vehicles . . . thereon. . . . Said commission *shall also* make regulations, in cooperation and agreement with local traffic authorities, respecting the use *by through truck traffic* of streets and highways within the limits of, and under the jurisdiction of, any city . . . for the protection and safety of the public." (Emphasis added.) The regulation of through truck traffic in this case was undertaken in cooperation with the local traffic authority of Hartford in the manner contemplated by the statute for traffic regulations of the second type. The specific purposes and limited applicability of the traffic regulations contemplated by the quoted words of General Statutes § 14-298, and particularly the words "[s]aid commission *shall also*" (emphasis added), indicate an intention on the part of the legislature

to distinguish such traffic regulations from those agency statements that are "regulations" within General Statutes § 4-166 (7).

We conclude therefore that the traffic regulation adopted by the state traffic commission as § 14-298-270 is not a regulation within the meaning of General Statutes § 4-166 (7) and is therefore not subject to the LRRC's review pursuant to the provisions of General Statutes § 4-170. This traffic regulation, having been validly promulgated, remained validly in force notwithstanding the disapproval of the LRRC. The "No Thru Trucks" signs can again be posted on Stone and Brookfield Streets.

Because the judgment of the trial court was correct as to the injunctive relief ordered, although based upon reasoning different from that which we find decisive, we affirm its judgment in that regard. *W. J. Megin, Inc.* v. *State,* 181 Conn. 47, 54, 434 A.2d 306 (1980); *State* v. *Assuntino,* 180 Conn. 345, 353, 429 A.2d 900 (1980); *Favorite* v. *Miller,* 176 Conn. 310, 317, 407 A.2d 974 (1978). That part of the judgment declaring General Statutes § 4-170 to be unconstitutional must however be vacated and set aside.

There is error as to the form of the judgment, it is set aside and the court is directed to render a judgment consistent with this opinion.

In this opinion the other judges concurred.