[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO DISMISS
 I. THE COMPLAINT
The plaintiffs are four employees of the fire department of the City of New Haven. All claim current eligibility, or likely eligibility in the future, to apply for the position of Captain in the fire department, according to civil service rules and regulations.
The plaintiffs allege that the process known as "underfilling" has so enlarged the pool of candidates who are eligible for promotion that the plaintiffs' chances of being promoted are unfairly diluted.
Underfilling occurs when a personnel slot for one job description or rank is filled by a worker at a lower rank and salary. An example alleged here is that the Department has created more lieutenants than the 48 lieutenants allotted in the budget by appointing otherwise eligible firefighters to 10 additional budgetary slots reserved for captains, a higher ranked and salaried position. These additional 10 hold the rank of lieutenant, work as lieutenants, and are paid lieutenants pay, rather than the higher salary of a captain. The department CT Page 10200 promotes and maintains fewer captains than are budgeted, as a result.
The plaintiffs allege that this practice has a discriminatory impact on African-Americans. They claim that the use by the defendants of the process of underfilling contravenes the law in four ways: that it violates 42 U.S.C. § 1981 and 1983; that it violates Title VII; that it violates Article First, §§ 1, 9, and 10 of the Connecticut Constitution; and that it constitutes the tort of intentional infliction of emotional distress.
The defendants, who are the City of New Haven, the Department of Fire Service, the Board of Fire Commissioners, and the Civil Service Commission, all represented by the corporation counsel, have moved to dismiss this action on several grounds: (1) that the case is insufficiently ripe; (2) that two of the plaintiffs lack standing to initiate and maintain this action; (3) that the issue has been previously litigated and is res judicata; and (4) that there exists an administrative remedy which to plaintiffs have failed to exhaust.
The plaintiffs oppose the motion to dismiss on all grounds.
 II. THE MOTION TO DISMISS
Conn. Prac. Book 10-31 provides
 The motion to dismiss shall be used to assert (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, and (5) insufficiency of service of process.
None of the grounds alleged in the defendants' motion to dismiss relates to the last four items. Rather, the claim is that the court should dismiss the matter because it lacks subject matter jurisdiction for the reasons specified in the motion.
Certain jurisprudential concerns such as mootness,[1]
ripeness[2], or standing[3] can affect the clarity with which a controversy is presented. Because these affect the posture of a case and may so compromise the effective presentation of the controversy as to render a proper result illusory, it is sometimes said that these issues affect the subject matter jurisdiction of the court. Though they often can and do militate CT Page 10201 against the court deciding a case, they do not really affect subject matter jurisdiction. They simply make proper adjudication so awkward that a court usually declines to proceed, for lack of a controversy distinct enough to make its judgment meaningful. In, this case, considering only the grounds in the motion to dismiss — lack of subject matter jurisdiction — the court finds no merit to the defendants' claims.
 III. RIPENESS
On the issue of ripeness, the defendants cite the Appellate Court case of Mayer v. Biafore, Florck O'Neill,45 Conn. App. 554 (1997), which explains that a cause of action and the harm to a plaintiff must be sufficiently definite or "ripe" to be capable of being adjudicated. In June of this year, the Supreme Court reversed the holding of the Appellate Court. Mayer v. Biafore,Florek O'Neill, 245 Conn. 88 (1998). The precise facts — the plaintiff sued his former attorneys for legal malpractice alleging that they missed the statute of limitations for filing an uninsured motorist claim — are not especially useful to this discussion. What is useful in the case is the understanding that there are varying degrees of ripeness: that a claim can be ripe without a prior legal determination that the plaintiffs have been as injured as they can get.
The defendants argue, for example, that the following scenario must exist before the plaintiffs' case is ripe: the plaintiffs must (a) take the captain's exam, (b) pass it, and (c) score high enough to make their promotion imminent, but then must (d) experience the frustration of being denied promotion because no slots are available because of other high scoring candidates or because of insufficient captains slots. Only then can the court entertain their lawsuit.
The requirements, as explicated in Mayer, are simply not that stringent. Rather, ripeness, a subset of justiciability, see full discussion in Section IV, infra, requires
 (1) that there be an actual controversy between or among the parties to the dispute . . .; (2) that the interests of the parties be adverse . . .; (3) that the matter in controversy be capable of being adjudicated by judicial power; Baker v. Carr; and that the determination of the controversy will result in practical relief to the complainant. (other citations omitted).
CT Page 10202
State v. Nardini, 187 Conn. 109, 111-112 (1982). All of these criteria are met by the plaintiffs here.
Having found that, at least at this stage of the lawsuit, the plaintiffs have alleged a controversy sufficiently ripe to withstand a motion to dismiss, it is nonetheless useful to trace the evolution of the assertion that lack of ripeness so compromises justiciability that it affects the subject matter jurisdiction of the Superior Court, since this provides a helpful basis to understand similar concerns on the issue of standing.
One source for the proposition that if a case is nonjusticiable, it must be dismissed for lack of subject matter jurisdiction, rearticulated in Mayer v. Biafore, Florek O'Neill, supra. is the case of Kleinman v. Marshall,192 Conn. 479, 484 (1984). Kleinman, refers to the case of State v.Nardini, supra, as its source. But Nardini, while stating that "before a claimed controversy is entitled to a resolution on the merits it must be justiciable," id., 111, nowhere holds or even suggests that lack of justiciability implicates subject matter jurisdiction. The only possible source for this corruption is the fact that Nardini cites Baker v. Carr, 369 U.S. 186
(1961), certainly the leading case on the ins and outs of federal subject matter jurisdiction.
But Baker v. Carr would not be clearer on
 whether our cases withholding federal judicial relief rested upon a lack of federal jurisdiction or upon the inappropriateness of the subject matter for judicial consideration — what we have designated "nonjusticiability." The distinction between the two grounds is significant.
Id., 198. Indeed the imprecision of language has fostered a confusion of the boundaries of the two concepts — justiciability and subject matter jurisdiction — and this court is mindful of the need to recognize these as separate concerns and to analyze each independently in that context of the instant case.
 IV. STANDING
The next ground the defendants urge upon the court is the lack of standing of two of the plaintiffs who have not attained the rank of lieutenant and are thus not as yet eligible to take the captains exam. The practice of underfilling is what the plaintiffs allege has prevented them from attaining that CT Page 10203 eligibility. Since "standing is the legal right to set the judicial machinery in motion," Connecticut courts have sometimes described the lack of standing to implicate the subject matter jurisdiction of the court. State v. Anonymous, 237 Conn. 501,509-10 (1996); Tomlinson v. Board of Education, 226 Conn. 704,717 (1993). In cases in which decisions of administrative agencies are challenged in the Superior Count pursuant to procedures prescribed by statute, the courts have held that the failure to follow those procedures renders the appeal defective. See, e.g., Village Creek Homeowners Association v. PublicUtilities Commission, 148 Conn. 336, 338-39 (1961). The problem is referred to as the court having a "want of jurisdiction," id.
or, in other cases as the court having "lacked jurisdiction."Chestnut Realty, Inc. v. CHRO, 201 Conn. 350 (1986).
But the proposition that lack of standing equals lack ofsubject matter jurisdiction arose from an unfortunate series of decisions in which language was cited out of context. Lack of standing is first said to deprive the Superior Court of subject matter jurisdiction as a general proposition in 1984 in the Appellate Court case of Housing Authority v. Local 1161,1 Conn. App. 154, 157, cert. den. 192 Conn. 802 (1984). The citation for that proposition is to Nader v. Altermatt, 166 Conn. 43, 53
(1974). But Nader was another appeal to Superior Court from a decision of an administrative agency (the defendant Paul Altermatt was the Insurance Commissioner) and the entire case deals with the issue of aggrievement, a necessary prerequisite under the statute for commencing an administrative appeal from an agency decision. The plaintiff was Ralph Nader, that gadfly of litigation, who was asserting the interest of the general public in challenging the Insurance Commissioner's decision to allow ITT Corporation to acquire an ownership interest in Hartford Fire Insurance Company.
The Supreme Court, agreeing with the trial court's decision that aggrievement had not been shown, stated:
 Appeals to the courts from decisions of administrative officers exist only under statutory authority. As we recently stated in Hartford Kosher Caterers Inc. v. Gazda, 165 Conn. 478, 484 . . . "[t]he concept of standing as presented here by the question of aggrievement is a practical and functional one designed to assure that only those with a genuine and legitimate issue can appeal an order." [other citations omitted] [emphasis supplied].
CT Page 10204
Nader v. Altermatt, 166 Conn. 43, 53 (1974). And later on in the opinion, the court stated, "As we have previously stated in this opinion, it is well-settled law that the question of aggrievement is a jurisdictional one. . ." Id., 59. This is certainly true for administrative appeals brought pursuant to Connecticut statutes.
A review of the other sources in the case reveals how such a proposition, correct in the one context, is incorrect when generally applied. For example, the Appellate Court decision inHousing Authority v. Local 1161, supra, also relies on a line of cases from the era when the multi-tier trial court in Connecticut allocated adjudicative responsibilities among several judicial bodies. Professor Lea Brilmayer, in An Introduction toJurisdiction in the American Federal System (1986), points out that to the extent that subject matter jurisdiction is ever "meaningful in the state law context," it is so because of a "state's own decision to allot adjudicative responsibilities among various judicial bodies." Brilmayer, supra, p. 20. This allotment can be based on the stage of the decision-making, as well as on the type of case or the monetary value of the controversy. Id.
Thus, historically a case brought erroneously to the Superior Court instead of the Court of Common Pleas had to be dismissed because the Superior Court had no authority to hear that type ofcase; and subject matter jurisdiction cannot be conferred by consent, nor its lack waived by the parties. See, e.g., Chieppov. Robert E. McMichael, 169 Conn. 646, 650 (1975), cited in Labowv. Labow, 171 Conn. 433 (1976), which is cited in HousingAuthority, supra.[4]
In fact, what is common to all these cases is the functional analysis, referred to in Nader v. Altermatt, of the parties and interests before the court, in order to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." Maloney v. Pac,183 Conn. 313, 320 (1981). Interestingly, the incisive analysis by Justice Peters of whether the plaintiff had alleged a sufficiently concrete and particularized injury to have standing in Maloney contains no discussion of standing as an impediment to subject matter jurisdiction. This corruption was only added later at the Supreme Court level in the case of Tomlinson v. Board of
CT Page 10205Education, supra. It seems almost as dictum, adopting the language, of the Appellate Court in Housing Authority.
What these cases actually hold is a somewhat more limited set of propositions: (1) that the allocation of adjudicative authority between administrative agencies and the Superior Court is strictly governed by certain statutes; (2) that these statutes describe when one body as opposed to the other has first-order jurisdiction over the subject matter; and (3) that when the statutes withhold authority from the Superior Court to readjudicate a prior administrative agency decision unless certain prerequisites are met, the lack of those prerequisites is equivalent to the lack of subject matter jurisdiction.
In this court's opinion, those are the only conclusions that can be drawn from the holdings and reasoning of our appellate courts on these issues. Lack of standing sometimes equals lack of subject matter jurisdiction, but by no means always does so.[5]
In this case, the court is being asked to consider a claim that has not previously been and could not properly be the subject of any disputed proceeding before an administrative agency. The plaintiffs may or may not lack standing. But such a determination does not, implicate the subject matter jurisdiction of this court. Thus it may not be determined on a motion to dismiss.
Moreover, recently the Connecticut Supreme Court has returned to the core interpretation of subject matter jurisdiction. InMary Doe v. John Roe, 246 Conn. 652, 661 (1998), the court reiterated:
 Subject matter, jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . Jurisdiction of the subject matter is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong. . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it.
Id., citing, inter alia, Demar v. Open Space ConservationCommission, 211 Conn. 416, 423-24, 559 A.2d 1103 (1989). Nor is this case and its posture without precedent, involving virtually the same parties. See, New Haven Firebirds Society v. Board ofFire Commissioners, 32 Conn. App. 585, 593-94 (1993) (trial court's finding that firefighters who have not taken promotional exam nonetheless are aggrieved and have standing to challenge CT Page 10206 promotional practices was not error.)
 V. RES JUDICATA
Res judicata must be specially pleaded. Conn. Prac. Book § 10-50. It is not an appropriate grounds for a motion to dismiss.
 VI. FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES
As has been previously discussed, adjudicative responsibility may be allocated among courts and administrative tribunals according to the subject matter of the dispute. The defendants raise the issue that since the plaintiffs allege employment discrimination, the plaintiffs must first take their claim to the Connecticut Commission on Human Rights and Opportunities (CHRO) under the Connecticut Fair Employment Practices Act (CFEPA), Conn. Gen. Stat. § 46a-51 et seq. Indeed, the CHRO is charged by the act with initial responsibility for the investigation and adjudication of claims of employment discrimination, and the failure to bring the complaint first to that body has been held to foreclose access to relief in the Superior Court, because of lack of jurisdiction. See Sullivan v. Board of PoliceCommissioners, 196 Conn. 208, 216-18 (1985).
None of the submissions of the defendants indicate that the plaintiffs actually failed to institute such an administrative complaint, although the defendants assert in their brief that no such proceeding was ever begun, and the plaintiffs, in reply, do not refute that assertion.
But even a finding that the plaintiffs failed to file an administrative complaint under CFEPA does not dispose of the issue. The plaintiffs, who are public employees suing a municipal defendant, are bringing their action under 42 U.S.C. § 1981
and 1983, and not under CFEPA. Such plaintiffs who choose to bring § 1983 claims instate court are not required to exhaust federal or state administrative remedies before filing suit.Felder v. Casey, 487 U.S. 131, 147-49, 108 S.Ct. 2302,101 L.Ed.2d 123 (1988). The motion dismiss cannot be granted on this basis.
 VII. CONCLUSION
This court has subject matter jurisdiction of the cause CT Page 10207 before it. The Motion to Dismiss is denied.
Pitman, J.