[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS OR STAY PROCEEDINGS
The defendant, Oxford Health Plans (CT), Inc. ("Oxford") has moved to dismiss, or, alternatively, to stay the above-captioned action on two grounds: (1) that the plaintiff lacks standing to assert the claims therein on its own behalf, and (2) that the plaintiff may not pursue on behalf of its members claims that the members have a contractual duty to arbitrate.
The court conducted a hearing, and the parties have filed both pre- and post-hearing briefs concerning the issues raised in the motion.[1]
The court finds that the Society lacks standing to assert the claims of its members because all of those claims are issues that the members are required by the provisions of written contracts to arbitrate with the plaintiff. The court finds that the Society has sufficiently alleged a direct injury to itself to have standing to pursue that injury.
Claims made
In its amended complaint, the plaintiff, Connecticut State Medical Society ("Society") alleges that it is "a federation of eight county medical associations and a constituent entity of the American Medical Association" with membership of over 7,000 physicians. The Society alleges that its "philosophy and purpose . . . is to promote the highest standards of medical care in the State of Connecticut, to work to preserve the integrity and independence of physicians, and to support the sanctity of the physician-patient relationship for the benefit of the public by, among other things, facilitating and assisting its physician members in providing top quality care to patients, providing them with a unified voice and enabling them to take concerted action on behalf of their profession and of their patients, and acting and advocating on their behalf to preserve the ability, independence and freedom of physicians to render the best possible care to every patient." (Amended complaint, para. 2.) CT Page 16583
The Society alleges that it has been injured and that its members have also been injured by certain practices and actions of Oxford.[2] It seeks injunctive relief against practices "which are designed to delay, deny, impede and reduce lawful reimbursement to [Society member] physicians who are participating physicians in defendant's network and who have rendered medically necessary health care service to members of defendant's managed care plans." (Amended complaint, para. 5.)
The Society alleges that it does not bring the action as an assignee of enrollees' right to benefits. (Amended complaint, para. 5.)
The foregoing summary is the Society's own characterization of the claim that is set forth in the paragraphs of its amended complaint that begin at paragraph 12 of the amended complaint. In those factual allegations, the Society alleges that Oxford insures Connecticut residents who select health care providers from a network of participating physicians who enter into written agreements with Oxford. These agreements contain terms governing the fees that physicians will be paid for treating Oxford enrollees.
The sole cause of action alleged by the Society is that the acts and practices alleged constitute unfair and deceptive trade practices in violation of the Connecticut Unfair Trade Practices Act, ("CUTPA"), Conn. Gen. Stat. § 42-110a et seq.
The Society limits the remedies it seeks to injunctive relief against continuation of the practices claimed to violate CUTPA, and also statutory attorney's fees and costs. The Society does not seek money damages.
Evidence presented
Because one of the grounds advanced as a reason to dismiss the case is the existence of an arbitration provision in the provider agreements between members of the Society and Oxford, an evidentiary hearing was necessary. Oxford submitted without objection an affidavit signed by Barbara J. Davis, Vice-President for Medical Delivery at Oxford. In an uncontradicted statement, Ms. Davis averred that each Connecticut physician who is part of the network of providers for Oxford enrollees has signed either a Primary Care Physician Agreement or a Consulting Physician Agreement. Both varieties of agreement are referred to as "provider agreements," and both varieties provide, at paragraph 11, that "[n]o civil action concerning any dispute arising under this Agreement shall be instituted before any court, and all such disputes shall be submitted to final and binding arbitration in Connecticut, pursuant to the rules of the American Arbitration Association with one arbitrator." CT Page 16584
Ms. Davis stated at paragraph 6 of her affidavit that "[n]o physicians in Connecticut covered by Provider Agreements with Oxford have filed for arbitration concerning the matters set forth in the Connecticut State Medical Society's Amended Complaint dated June 28, 2001." She further stated that physicians are free to contract with other networks if they contract with Oxford, and that approximately 5,000 out of an estimated 10,340 physicians in Connecticut are covered by provider agreements with Oxford.
The defendant presented evidence, in the form of other paragraphs of Ms. Davis' affidavit, to the effect that physicians located in Connecticut who have signed provider agreements with Oxford treat patients who reside in other states and that some administrative reviews and functions of Oxford at issue in the complaint are performed in states other than Connecticut.
The Society presented no evidence but apparently takes the position that the issue of its standing to allege a direct injury to itself, as opposed to injuries to its members, is to be determined on the basis of the allegations of the amended complaint.
The claims made in the amended complaint
The plaintiff Society sues in two capacities: as a representative of its members and on its own behalf.
In its amended complaint, the Society alleges that Oxford denies and/or delays payments to its physician members who have entered into provider agreements with Oxford and who perform medically necessary health care services to Oxford enrollees. The plaintiff further alleges that Oxford codes members' services in ways that result in lower compensation than is warranted, denies payment for multiple services performed in the same visit, fails to apply upward adjustments for complicated cases that require additional expenditure of time by physicians, makes determinations concerning medical necessity that are not in accordance with applicable medical and legal standards, and fails to provide adequate staffing to process required approvals. (Amended complaint, paras. 10-39.)
As a separate claim, the Society asserts that Oxford's practices regarding Society members' provision of services to Oxford enrollees constitute unfair trade practices in violation of CUTPA.
The Society also alleges that "Oxford's wrongful conduct also causes direct injury to [the Society] because [the Society] has been, and CT Page 16585 continues to be, frustrated by defendant's practices in its efforts to achieve its purpose and [the Society] has been required to devote significant resources to dealing with the issues concerning defendant's unfair practices." (Amended complaint, paras. 10, 40.) At paragraph 48 of the amended complaint, the Society alleges that "[a]mong other things, defendant's unfair and/or deceptive course of conduct and business practices have forced [the Society] to devote significant resources to handle physician inquiries and counsel physicians in an effort to identify and counteract the harm caused by defendant as set forth in the Complaint."
Standard of review
The claim that a party may not bring a civil suit because of a written agreement to arbitrate is to be adjudicated by finding whether such an obligation has been proven. Conn. Gen. Stat. § 52-408; Bennett v.Meader, 208 Conn. 352 (1988).
A claim of lack of standing is, by contrast, not to be decided on the basis of the evidence in support of the claim, but on the basis of the allegation of a direct injury in the pleadings. As the Connecticut Supreme Court has repeatedly stated, the requirement that a claimant have standing "is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decision which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." Maloneyv. Pac, 183 Conn. 313, 320 (1981); accord, Connecticut AssociatedBuilders Contractors v. Hartford, 251 Conn. 169, 178 (1999); Gay Lesbian Law Students Assn. v. Board of Trustees, 236 Conn. 453, 463
(1996); Unisys Corp. v. Dept. of Labor, 220 Conn. 689, 693 (1991).
The Court has ruled that the dual objectives of standing, namely, "concrete adverseness" and diligent advocacy, "are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. Maloney v. Pac, supra, 183 Conn. 321. The injury need not be economic in nature and it may be extremely small. Id.
With regard to the standing of an association such as the plaintiff Society to assert harm to its members, the Connecticut Supreme Court stated in Gay Lesbian Law Students Assn. v. Board of Trustees, supra,236 Conn. 464, that it has adopted the federal standard of associational standing as set forth in Hunt v. Washington State Apple AdvertisingCommission, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). That CT Page 16586 standard is as follows:
 An association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.
Id.; Gay Lesbian Law Students Assn. v. Board of Trustees, supra,236 Conn. 464.
An organization also has standing to sue for relief from injury to itself, apart from any injury to its members, since standing may be established "in an individual or representative capacity." Warth v.Seldin, 422 U.S. 490, 511 (1975); Maloney v. Pac, supra, 183 Conn. 121.
The issue of standing is to be decided by inspecting the allegations of the complaint and determining whether those allegations are facially sufficient to state a claim based either on direct injury to the association or injury to its members. In Connecticut Association ofHealth Care Facilities, Inc. v. Worrell, 199 Conn. 609, 618 (1986), the Supreme Court reversed a dismissal based on a finding that the plaintiff association lacked, noting that "[t]he allegations in the plaintiffs' complaints are sufficient to confer standing." The federal courts similarly rule that a determination of standing is not to be made on the basis of evidence of the direct harm to the association, but only on the allegations of the complaint. The United States Supreme Court has ruled that the issue on a question of the standing of an association to assert a direct injury to itself is "the same inquiry as in the case of an individual: Has the plaintiff alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction?" (Internal quotation marks and citations omitted.) HavensRealty Corp. v. Coleman, 455 U.S. 363, 377, 102 S.Ct. 1114,71 L.Ed.2d 214 (1982); Arlington Heights v. Metropolitan Housing Dev. Corp.,429 U.S. 252, 261, 50 L.Ed.2d 450; 97 S.Ct. 555 (1977); Baker v. Carr,369 U.S. 186, 204, 7 L.Ed.2d 663, 82 S.Ct. 691 (1962). The United States Supreme Court ruled in Warth v. Seldin, supra, 422 U.S. 501, that for purposes of ruling on a motion to dismiss for lack of standing, the trial court must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party.[3]
Connecticut procedure likewise requires that a court considering an issue of standing raised by a motion to dismiss must construe the allegations of the complaint in favor of the pleader. Ganim v. Smith CT Page 16587Wesson Corp., 258 Conn. 313, 348 (2001); Cummings v. Tripp, 204 Conn. 67,75 (1987); Brewster v. Brewster, 152 Conn. 228, 233 (1964).
Does its members' obligation to arbitrate bar the Society's claims ontheir behalf?
The Society asserts that both Connecticut law concerning arbitrations and the Federal Arbitration Act, 9 U.S.C. § 1 through 16, require dismissal of the Society's claims that are based on allegations of violation of contractual duties owed to those physicians by Oxford. The parties have referred to these claims as "representative" claims, referring to the fact that the Society seeks to represent its member physicians in asserting claims of breach of the letter or spirit of the provider agreements. The Society acknowledges that it makes some claims as a representative of its physician members and other claims on its own behalf.
In Connecticut Associated Builders Contractors v. Hartford,251 Conn. 169, 185 (1999), the Connecticut Supreme Court ruled that an association has standing to bring suit for the benefit of its members if it meets the test for representational standing articulated in Hunt v.Washington State Apple Advertising Commission, 432 U.S. 333, 343,97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). The Connecticut Supreme Court noted that what it termed "representational" or "surrogate" standing has both substantive and procedural aspects. Connecticut Associated Builders Contractors v. Hartford, supra, 251 Conn. 169.
In the case before this court, the facts demonstrate that all physicians who affiliate with Oxford sign provider agreements in which the physicians agree that they will arbitrate their disputes arising under the agreement with Oxford as a condition precedent to bringing a civil action. The facts do not demonstrate that the Society signed any agreement to arbitrate any disputes it has with Oxford concerning direct harm to itself.
Connecticut General Statutes § 52-408 provides that a written agreement to arbitrate "shall be valid, irrevocable and enforceable." The extent and scope of the obligation to arbitrate is defined by the language of the parties' agreement to arbitrate. "Arbitration is a creature of contract. It is the province of the parties to set the limits of the authority of the arbitrators, and the parties will be bound by the limits they have fixed." Success Centers, Inc. v. Huntington LearningCenters, Inc., 223 Conn. 761, 772 (1992). A party can be compelled to arbitrate a dispute "only if, to the extent that, and in the manner in which, he has agreed to do so." White v. Kampner, 229 Conn. 465, 471
(1994). CT Page 16588
Where the contractual provision defining the scope of the disputes that the parties have agreed to arbitrate is not entirely clear, the rule of construction to be applied to the words of the contract is the "positive assurance test." United Steelworkers of America v. Warrior GulfNavigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 4 L.Ed.2d 1049
(1960); White v. Kampner, supra, 229 Conn. 472-73. Under this test, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." White v. Kampner, supra,229 Conn. 473, quoting Board of Education v. Frey, 174 Conn. 578, 582
(1978); see also John A. Errichetti Associates v. Boutin, 183 Conn. 481,489 (1981); Green v. Connecticut Disposal Service, Inc., 62 Conn. App. 83, 87-88 n. 4, cert. denied, 256 Conn. 912 (2001).
All of the claims that the Society seeks to assert as a representative of its members are claims arising under the provider agreements. The Society claims that Oxford uses various administrative requirements and schemes to delay and deny full payments due to Society members under the provider agreements, and that it fails to provide staffing adequate to fulfill the administrative needs of the physicians. Applying the positive assurance test, this court finds that such claims are within the universe of claims that the physicians who are parties to provider agreements with Oxford have agreed to arbitrate as a condition precedent to filing suit.
As this court has recently held in McIntosh v. Oxford Health Plans, Superior Court, judicial district of Waterbury, Docket Number X01 CV 01 0165663, physicians who have contracted with Oxford may not, under the terms of their contracts, institute civil actions concerning claims arising under the contracts unless and until they have arbitrated those disputes. The agent or representative of a party that has agreed to arbitrate a particular dispute is also subject to the terms of the arbitration agreement. Levine v. Advest, Inc., 244 Conn. 732, 758-61
(1998) (university for whose benefit donor established scholarship fund account was entitled to enforce the arbitration agreement in the brokerage account in which the fund was managed); Berlin v. NobelInsurance Co., 60 Conn. App. 56, 62 (2000) (party that had taken over rights and obligations of a contractor was bound by arbitration provision in contract entered into by contractor).
It is illogical to assume that the representative or agent of a party that has agreed to arbitration may enforce that agreement but not itself be subject to the duty to arbitrate. An association whose members cannot, for such procedural reasons, bring suit on their own behalf, has no standing to bring the same suit on its members behalf. To hold CT Page 16589 otherwise would be to defeat the enforceability of arbitration agreements, as a party that had agreed to arbitrate could sidestep that obligation merely by having a surrogate, whether an association or an assignee, bring the suit on its behalf, depriving the other party to the contract of the benefit of the provisions of the contract. The rulings inLevine v. Advest, supra, 244 Conn. 732, and Berlin v. Noble InsuranceCo., supra, 60 Conn. App. 56, signal that a surrogate or representative stands in the same position with regard to an arbitration agreement as the party whose interest it has adopted or that it represents.
The Society argues that even if the agreement to arbitrate applies to the Society as the representative of its members, CUTPA claims are outside the realm of disputes which its members have agreed to submit to arbitration. The issue whether a party is obligated to arbitrate a particular dispute depends on the wording of the arbitration clause: is the dispute at issue within the scope of the subject matter that a party agreed to arbitrate rather than litigate? As this court has ruled inMcIntosh v. Oxford Health Plans (CT), Inc., supra, Docket No. X01 01 0165663, a claim that a party's method of doing business under a contract violates CUTPA is a dispute that arises under the contract. Contrary to the Society's assumption, the courts have not decided that there are some statutory causes of action that are exempt from arbitration even if the parties have agreed to broad terms that include such statutory claims within the scope of the agreement to arbitrate. Legal issues as well as factual issues may come within the scope of an agreement to arbitrate.Garrity v. McCaskey, 223 Conn. 1, 8 (1992). In Success Centers, Inc. v.Huntington Learning Centers, Inc., supra, 223 Conn. 773, the Connecticut Supreme Court noted that the plaintiff had not directed its attention to any authority that prohibits the arbitration of CUTPA claims, but stated that if an arbitrator had improperly decided a CUTPA claim, the issue could be raised in a motion to vacate the arbitrator's award. A CUTPA claim was the subject of an arbitration in Saturn Construction Co. v.Premier Roofing Co., 238 Conn. 293 (1996), and the confirmation of the award by the Superior Court was upheld in the face of a challenge to the arbitrator's legal determinations, including an award of attorney's fees authorized by CUTPA.
As an alternative to its position that claims of CUTPA violations cannot in general be construed to be within the scope of their agreement to arbitrate disputes, the plaintiff asserted at oral argument that the wording of the arbitration provision in the agreement its members signed does not evince an agreement to arbitrate such a claim. The plaintiff contends that the CUTPA claim is not a dispute "arising under" the provider agreements. In Fink v. Golenbock, 238 Conn. 183, 196-97 (1996), the court found the term "arising under" used in an arbitration clause to be "all-embracing, all-encompassing and broad" enough to include CUTPA CT Page 16590 claims.
The conduct that the Society disputes is Oxford's manner of performing or failing to perform its obligations under the provider agreements. In its representational claims the Society asserts, in essence, that Oxford has so grossly perverted its performance that its conduct constitutes an unfair trade practice. These claims appear to this court, applying the "positive assurance" test identified above, to "arise under" the provider agreements, as they are directed to the manner of performance of obligations under that agreement.
The Society further argues that even if it may not assert as a representative claim that its members could not themselves assert in a civil action, its members should be relieved of their obligation to arbitrate because arbitrators may not be able to grant full relief, particularly, injunctive relief. The sole case on which the Society relies on this issue is Broughton v. CIGNA Healthplans of California, 988 P.2d 67
(Ca. 1999). In that case, the California Supreme Court held that a plaintiff had an enforceable duty to arbitrate his claim for damages under the California Legal Remedies Act, Cal. Civ. Code § 1750 et seq. but that he need not arbitrate his claim for injunctive relief brought not on his own behalf but as a private attorney general acting on behalf of consumers in general to enjoin unfair or deceptive practices.
In this case, it has not been demonstrated that if a physician brought a CUTPA claim in an arbitration, an arbitrator could not issue an order prohibiting Oxford from engaging in any practices the arbitrator found to be unfair or deceptive. Connecticut law contains a provision, Conn. Gen. Stat. § 52-417, by which a party may move that a court confirm the award, thus securing the mechanisms of enforcement by the court. This court is, moreover, required to follow the ruling of the Connecticut Supreme Court in Fink v. Golenbock, supra, 238 Conn. 183, which, unlike the California ruling, holds that CUTPA claims are subject to arbitration.
For reasons of procedure deriving from its members' agreements to pursue arbitration as a condition precedent to civil suit, the association lacks standing to bring representational claims. The motion to dismiss the Society's claims made on behalf of its members is therefore granted.
Does the Society have standing to pursue the claims on its own behalf?
The movant presented no evidence of any agreement by the Society itself to arbitrate its disputes with Oxford that relate to allegations of direct injury to itself, rather than injury to its members. Oxford asserts, however, that the Society has failed to allege sufficiently a CT Page 16591 direct injury to itself and therefore lacks standing to assert such claims. Unlike the plaintiffs in United States v. SCRAP, 412 U.S. 669,687, 37 L.Ed.2d 254, 93 S.Ct. 2405 (1973), and Warth v. Seldin, supra, 422 U.S. 499, the Society does not allege merely a philosophical interest in a matter of public concern, but an actual injury to itself.
The movant has cited a number of federal trial court rulings in which the trial courts have either found the allegations of the complaint alleged a "generalized concern" rather than the "concrete and demonstrable injury" found in Havens Realty Corp. v. Coleman, supra,455 U.S. 363; see National Congress for Puerto Rican Rights v. City ofNew York, 75 F. Sup.2d 154, 165 (1999); or decided that the alleged direct interest was not proven. American Medical Association v. UnitedHealthcare, 2001 U.S. Dist. Lexis 10818 (S.D.N.Y.).
In Project Sentinel v. Evergreen Ridge Apartments, 40 F. Sup.2d 1136
(N.D. Cal. 1999), the trial court noted an important distinction in its ruling granting dismissal on the basis of an insufficient allegation of an actual injury to a direct interest of the plaintiff association. The court found that where the only diversion of resources alleged was a reference to the resources devoted to the law suit at issue, the requirements for standing were not met. The court explained that "[i]n other words, an organization establishes an Article III injury if it alleges that unlawful action has increased the resources the group must devote to programs independent of its suit challenging the unlawful action." (Emphasis added.) Project Sentinel v. Evergreen RidgeApartments, supra, 40 F. Sup. 1138.
In another case cited by the movant, the determination of lack of standing was made not on a motion to dismiss but on appeal, and the appellate court had an opportunity to review not only pleadings but evidence in concluding that "[t]here is no evidence that [the statute being challenged by the association] has subjected NTU to operational costs beyond those normally expended to review, challenge, and educate the public about revenue-related legislation." National Taxpayers Union,Inc. v. United States, 68 F.3d 1428, 1434 (D.C. Cir. 1995). The claims of the associations that were co-plaintiffs in Guckenberger v. BostonUniversity, 957 F. Sup. 306, 320 (D. Mass. 1997), were dismissed because the claims of direct injury made in their brief were not pleaded as allegations of injury in the complaint, which contained allegations only that they expected to expend resources to challenge the defendant's policy at issue in the suit. The dismissal of the association's direct claim in Risinger v. Concannon, 117 F. Sup.2d 61, 68 (D. Me. 2000), was the result of the fact that "the First Circuit has promulgated a heightened pleading requirement for the purposes of standing, requiring a plaintiff to `set forth reasonably definite factual allegations, either CT Page 16592 direct or inferential, regarding each material element needed to sustain standing'." U.S. v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992).
The pleading rules applicable to the present motion are those supplied not by the First Circuit but by the Connecticut Practice Book. Under those provisions, if the movant had desired a more specific statement of the claims of direct injury to the Society, it could have filed a request to revise. Where no such request has been filed, pursuant to Ganim v.Smith Wesson Corp., 258 Conn. 348, and Cummings v. Tripp, supra,204 Conn. 67, the court construes the allegations of the complaint in the manner most favorable to the pleader, and there is no basis for dismissal for failure to plead to a level of detail that the movant has not requested.
The appellate rulings counsel that standing is not to be determined by whether the injury an association alleges that it has suffered the same injury at issue in Havens Realty Corp. v. Coleman, supra, 455 U.S. 363, but only whether the association alleges in the complaint that it has suffered some injury that is not merely a blow to its philosophical position on an issue. See Ragin v. Harry Macklowe Real Estate Co.,6 F.3d 898 (2d Cir. 1993).
The Society has alleged that because of the defendant's practices, it has had to devote resources not simply to challenging the defendant's perceived misconduct in this lawsuit, but to "hand[ling] physician inquiries and counsel[ing] physicians" not only to identify but to "counteract" the claimed harm. Though it is possible that at trial it may emerge that these efforts are actually part of the Society's litigation to challenge to the defendant's practices, the court has no way of knowing whether this is so. The rather general allegations might refer, for example, to operating a consultation service to resolve ethical quandaries of physicians confronted by what they may feel to be competing obligations to the defendant and to their patients.
In stating what the direct injuries to the associations were in HavensRealty Corp. v. Coleman, 455 U.S. 363, and Ragin v. Harry Macklowe RealEstate Co., supra, 6 F.3d 898, it does not appear at all likely that the federal courts were limiting standing to those associations that allege only the same injuries as the association in those cases. The Society alleges more than an abstract or philosophical interest, and more than the need to spend money to pursue this suit in order to attempt to obtain relief for its members. Read in the required manner, these allegations assert a direct injury to the Society sufficient to allege standing.
Because this case is now before the court not after trial on the merits but only on a motion to dismiss, a setting in which the allegations of CT Page 16593 the complaint must be construed in favor of the pleader, Ganim v. Smith Wesson Corp., supra, 258 Conn. 348; Cummings v. Tripp, supra, 204 Conn. 75;Brewster v. Brewster, supra, 152 Conn. 233; and it would be inappropriate for this court to delve into the ability or inability of the Society to prove particular diversions of resources caused by Oxford's alleged unfair trade practices. The court finds that the Society has sufficiently alleged direct injury to itself, and that it has standing to bring suit to address that injury.
Conclusion
The motion to dismiss the claims asserted by the Society as a representative of its member physicians is granted. The motion to dismiss the claim of the Society that it has suffered a direct injury to itself as a result of the defendant's actions and practices is denied. The movant has demonstrated no reason to stay the latter claim, and the motion to stay is denied.
Beverly J. Hodgson Judge of the Superior Court