JORGE L. NEGRON *v.* WARDEN, HARTFORD COMMUNITY CORRECTIONAL CENTER

COTTER, C. J., BOGDANSKI, HEALEY, WRIGHT and N. O'NEILL, Js.

Argued January 10—decision released March 25, 1980

*David P. Gold,* law student intern, with whom were *Michael R. Sheldon* and, on the brief, *Gary R. Johnston,* law student intern, for the appellant (plaintiff).

*Robert E. Beach, Jr.,* assistant state's attorney, for the appellee (defendant).

COTTER, C. J.   This is an appeal from the denial of a hearing by the Superior Court, *O'Brien, J.,* on a second application brought by the plaintiff for a writ of habeas corpus based on an alleged illegal imprisonment due to his fugitive from justice status arising out of a manslaughter conviction in New

York state. The narrow issue presented by this appeal is whether a plaintiff is entitled to a hearing upon a second application for a writ of habeas corpus if this second application is based on a different ground from any asserted in the initial habeas corpus application although not based on new evidence or new facts that were not reasonably available to the plaintiff at the time of the hearing on the first application. The underlying factual situation which brings this issue before this court is intricate, albeit undisputed, and requires delineation at some length.

On November 30, 1972, the plaintiff was indicted in the state of New York for murder. Subsequently, while released on bail, the plaintiff failed to appear for his New York trial in January, 1974, and in his absence he was convicted of manslaughter in the first degree. A New York warrant for his arrest for failure to appear was issued on or about January 9, 1974.

In February of 1977, the plaintiff was arrested on a Connecticut charge of attempted murder for an offense which allegedly occurred on January 3, 1977. On March 7, 1977, the plaintiff was charged in Connecticut with being a fugitive from justice from the state of New York. Also on March 7, 1977, the plaintiff was bound over to the Connecticut Superior Court on the charge of attempted murder in Connecticut. Later, on April 18, 1977, the state of Connecticut entered a *nolle prosequi* to the fugitive from justice charge; at that time the plaintiff was detained, in any event, on the charge of attempted murder in Connecticut.

Approximately seven months after the plaintiff was bound over to the Superior Court, the Connecti-

cut state's attorney's office began corresponding with New York state authorities concerning the plaintiff's extradition to New York. This correspondence led to the signing of a governor's warrant by Governor Grasso of Connecticut on May 24, 1978, for the purpose of extraditing the plaintiff to the state of New York. The governor's warrant was executed on June 13, 1978, and on July 10, 1978, the plaintiff made an application to the Superior Court for a writ of habeas corpus challenging his arrest on that warrant. This initial habeas corpus action involved a number of claims described in detail later in this opinion. Some were made by the plaintiff pro se and others were contained in a supplemental application made by the attorney then representing the plaintiff. The court, *O'Brien, J.,* considered these claims at a hearing on August 24, 1978, and in a lengthy and detailed memorandum of decision rendered October 19, 1978, denied the claims and dismissed the writ of habeas corpus.

On November 8, 1978, following dismissal of the first habeas corpus action, the plaintiff obtained new counsel and filed another application. That application was summarily denied without a hearing on November 29, 1978, by the court, *O'Brien, J.,* and after certification was granted to appeal that denial to this court, the plaintiff filed the present appeal on December 19, 1979. Early in 1979, the plaintiff was acquitted of the attempted murder charge against him for the episode which occurred in Connecticut in 1977. Thus, since that time, the plaintiff has been incarcerated pursuant to the governor's warrant which was signed on May 24, 1978.[1]

[1] The defendant asserts in his brief that bond has been set, but not met.

The plaintiff claims that the court below erred in denying him a hearing on the merits of his second application for a writ of habeas corpus because it involved a legal claim which had not been presented previously to the court. The plaintiff does not contend that this legal claim in the second application was unavailable at the time of the hearing on his first habeas corpus action but only that it was not deliberately withheld at the time of the initial habeas corpus application. He maintains that the trial court's denial of a hearing on the second application constituted error in that it was in violation of the rules and statutes of this state and in violation of article first, § 10 of the Connecticut constitution. Thus, the threshold question raised by the plaintiff's claim of error is whether, and if so, with what guidelines, the rules and statutes of this state mandate a hearing upon a second application for a writ of habeas corpus if the second application is based upon a different ground from any relied on in the initial habeas corpus application.

## I

When the plaintiff filed his second application, the procedures governing habeas corpus proceedings were set forth either in Practice Book, 1978, §§ 529 through 536 or in chapter 915 of the General Statutes, §§ 52-466 through 52-470. The plaintiff contends, and we agree, that the question of whether a hearing is mandated in a second application is controlled by Practice Book, 1978, § 531.[2]  Section 531

---

[2] The only statutory provision which might be considered to bear upon this question is General Statutes § 52-470 which reads in relevant part: "The court or judge hearing any habeas corpus shall proceed in a summary way to determine the facts and issues of the case, by hearing the testimony and arguments therein, and inquire fully into the cause of imprisonment, and shall thereupon dispose of

provides: "If the petitioner has filed a previous application, it and the action taken thereon shall be summarily described in the pending application. If a previous application brought on the same grounds was denied, the pending application may be dismissed without hearing, unless it states new facts or proffers new evidence not reasonably available at the previous hearing." The language of § 531 is clear on its face and prescribes that trial courts may dismiss a second application without a hearing only if that application asserts the same grounds and fails to state new facts or proffer new evidence not reasonably available to the petitioner at the hearing on his previous application. The necessary implication of this prescription is that if different grounds are asserted, a hearing on the second application is indicated. It is also clear that in this context "ground" must mean a "sufficient legal basis for granting the relief sought." *Sanders* v. *United States,* 373 U.S. 1, 16, 83 S. Ct. 1068, 10 L. Ed. 2d 148.[3]

the case as law and justice require." By referring exclusively to the duties of the "court or judge *hearing* any habeas corpus," § 52-470 serves, however, only to delineate the proper scope of a hearing if one is legally required. To determine whether a hearing is, in the first instance, legally required, Practice Book, 1978, § 531 must be considered.

[3] *Sanders* v. *United States,* 373 U.S. 1, 83 S. Ct. 1068, 10 L. Ed. 2d 148, is the leading United States Supreme Court case on the subject of whether a second application for habeas corpus relief merits a hearing and its definition of "ground" is utilized. Looking to federal law to support a definition of "ground" in Practice Book, 1978, § 531 is particularly appropriate in this context because the federal constitutional and statutory framework for habeas corpus relief is similar to the one provided by Connecticut's constitution, statutes, and rules of practice, and there is no decision of this court which discusses the scope and applicability of § 531 or its predecessors. The writ of habeas corpus is constitutionally guaranteed by article one, § 9 of the United States constitution; compare article first, § 12 of the Connecticut constitution; but the right to a hearing

The plaintiff maintains that the trial court, in denying him a hearing on his second application, had determined that the new petition presented a legal claim which was not alleged in the earlier petition. Thus, he argues that our determination that Practice Book, 1978, § 531 provides for a hearing where the second or successive application states a different ground, that is, legal basis for granting the relief sought, should be dispositive of this appeal

is statutorily limited by 28 U.S.C. § 2244 which provided in pertinent part at the time of the *Sanders* decision: "No . . . judge shall be required to entertain an application for a writ of habeas corpus . . . if it appears that the legality of [the] detention has been determined . . . on a prior application for a writ of habeas corpus and the *petition presents no new ground not theretofore presented and determined,* and the judge or court is satisfied that the ends of justice will not be served by such inquiry." (Emphasis added.) It was in the context of formulating basic rules to guide the lower federal courts in determining whether to hear successive habeas corpus actions pursuant to 28 U.S.C. § 2244 and other federal statutes that the *Sanders* court rendered its definition of "ground."

In 1966, 28 U.S.C. § 2244 was amended to provide in part: "When after an evidentiary hearing on the merits of a material factual issue, or after a hearing on the merits of an issue of law, a person in custody pursuant to the judgment of a State court has been denied by a court of the United States or a justice or judge of the United States release from custody or other remedy on an application for a writ of habeas corpus, a subsequent application for a writ of habeas corpus in behalf of such person need not be entertained by a court of the United States or a justice or judge of the United States unless the application alleges and is predicated on a factual or other ground not adjudicated on the hearing of the earlier application for the writ, and unless the court, justice, or judge is satisfied that the applicant has not on the earlier application deliberately withheld the newly asserted ground or otherwise abused the writ." 28 U.S.C. § 2244 (b). This amendment did not in any way restrict the availability of habeas corpus nor was it apparently intended to do so. See Report of the Senate Judiciary Committee, 1966 U.S. Code Cong. & Adm. News., p. 3664. It simply altered the procedures by which a federal district court would determine that an applicant's conduct barred him from a right to be further heard. See *Johnson* v. *Copinger,* 420 F.2d 395, 398 (4th Cir.). The Supreme Court in *Sanders* had recognized that such conduct could serve to bar further hearings. *Sanders* v. *United States,* supra, 17-19.

and contends that this court need not and should not address the question of whether the plaintiff's new application does constitute a different ground from any relied on in his first application. We disagree. Even if we were to read the trial court's reason for denial as conceding that a different ground had been raised in the plaintiff's second application,[4] our inquiry into whether that ground had been raised would be warranted by the oft-repeated holding of this court that where the trial court arrives at a correct decision, but on incorrect grounds, that decision will be affirmed if proper grounds do exist to support it. See, e.g., *Royce* v. *Freedom of Information Commission,* 177 Conn. 584, 588, 418 A.2d 939; *Favorite* v. *Miller,* 176 Conn. 310, 317, 407 A.2d 974; *Morris* v. *Costa,* 174 Conn. 592, 598, 392 A.2d 468; Maltbie, Conn. App. Proc. § 36.

If the second application failed to raise a different legal ground, the trial court would not have erred in denying a hearing pursuant to Practice Book, 1978, § 531. It is thus necessary to determine

---

[4] The court orally stated its reason for denying a hearing on the second application: "I think if you have constitutional claims, they should be raised at the earliest time that is possible to raise them and you can't come in and raise one and then you get denied on one and make the other, and continually raise constitutional questions as they occur to the mind of the defendant or to his counsel and so, therefore, we've had one hearing on this, and I think he should have raised it at the initial time. He didn't do it, and I think he's foreclosed of raising it at this time, and so for that reason I will deny the writ." This statement does not leave the court's rationale for its denial totally free from uncertainty. A possible interpretation is that the phrase "if you have constitutional claims" is the equivalent of "assuming arguendo you have different constitutional claims" and thus no concession has been made that different grounds do necessarily exist.

whether the plaintiff's application does assert a new ground or is, as the defendant contends, merely a verbal reformulation of previously rejected claims.

## II

At the time of the first application for a writ of habeas corpus the plaintiff pro se raised the following claims: New York state had violated the Uniform Criminal Extradition Act; Connecticut General Statutes §§ 54-157 through 54-185; in failing to apply for a governor's requisition in timely fashion pursuant to General Statutes § 54-171. The entering of a *nolle prosequi* on April 18, 1977, by the state of Connecticut on its fugitive from justice charge operated collaterally to estop New York from extraditing the plaintiff. Underlying this argument was the assumption that the entry of a *nolle prosequi* was an action on the merits of the New York manslaughter conviction and that extradition would thus be barred by the constitutional protections against double jeopardy.

The trial court denied this claim, and the plaintiff on appeal concedes its lack of merit. The *nolle* was obviously not a ruling on the merits of the New York manslaughter charge and the claim that the actions of the state of Connecticut can circumscribe the powers of New York state under the Uniform Criminal Extradition Act was effectively barred by *Glavin* v. *Warden,* 163 Conn. 394, 311 A.2d 86.

In the plaintiff's first application, as supplemented, his attorney raised the following additional claims in seeking a determination that the plaintiff's detention pursuant to the governor of New York's requisition and to the governor of Connecticut's warrant was illegal: Connecticut General

Statutes § 54-163 in authorizing the governor to execute extradition warrants of arrest violates provisions of the federal and state constitutions; the plaintiff's arrest violates provisions of the federal and state constitutions because Governor Grasso signed the warrant without affording the plaintiff a hearing. The governor's warrant was based on information which failed to set forth facts constituting probable cause that: the plaintiff was convicted of a crime in the state of New York; he was in New York when the conviction was reached; and he knowingly fled the state of New York on learning of the charges against him. Connecticut General Statutes § 54-171, a provision of the Uniform Criminal Extradition Act, had been violated by New York by its failure to act in timely fashion to obtain a governor's warrant in the state of Connecticut. New York state had violated the plaintiff's rights under article V, section (c) of the Agreement on Detainers; Connecticut General Statutes § 54-186; in delaying action on their detainer once it had been filed and in seeking or requesting a governor's warrant from Connecticut over a lengthy period of time.

In the plaintiff's second application, when he was represented by his present attorney, he claimed that the state of Connecticut was barred from delivering the plaintiff to New York authorities because of its violation of its own statutes and rules of practice. The plaintiff specifically contended that the state's entry of a *nolle prosequi* to the fugitive from justice charge, at a time when the plaintiff was involuntarily absent from the courtroom, followed by a more than thirteen month period before the reinstitution of the fugitive from justice charge pursuant to the issuance and execution of a gov-

ernor's warrant violated General Statutes §§ 54-46, 54-142a (c) and Practice Book, 1963, § 2137 (§ 726 of the 1978 Practice Book).[5] The plaintiff argued that to permit the state of Connecticut, in the face of these alleged violations, to surrender the plaintiff into the custody of the state of New York would be a violation of his constitutional guarantees of due process and equal protection of the law.

On this appeal the plaintiff maintains that although both habeas corpus applications involve issues concerning the entry of a *nolle prosequi* to the fugitive from justice charge, the legal basis for the relief sought in the second application is fundamentally different from the grounds raised in the first application. We agree.

In the first application, each claim of a violation of the Uniform Criminal Extradition Act or of a constitutional guarantee was addressed to the authority of the state of New York to receive the plaintiff into its custody. The legal basis for the relief sought in the second application was that the state of Connecticut, because of alleged violations of its own court rules and statutes, was barred from surrendering the plaintiff to the custody of New York authorities. In other words, while one of the grounds of the plaintiff's first application was an attack on the demanding state's continuing authority to subject the plaintiff to its penal laws in light of the alleged impact of Connecticut's entry of a *nolle prosequi* to the fugitive from justice charge, the second application challenges the asy-

---

[5] Pursuant to General Statutes § 54-46 and Practice Book, 1963, § 2137, the plaintiff is given the opportunity to object to the entry of the *nolle prosequi* and to demand either an immediate hearing on the underlying charge or its dismissal.

lum state's authority to surrender the plaintiff in light of the alleged impact, under the asylum state's rules of practice and statutes, of the entry of a *nolle prosequi* on the fugitive from justice charge followed by the lapse of time in this case before the asylum state renewed prosecution of the fugitive charge.

The defendant claims that the plaintiff's applications both rely on the same ground under the *Sanders* v. *United States,* supra, definition of that term. He asserts that the arguments advanced in both applications assume that the *nolle* of the fugitive from justice charge constitutes a decision on the merits that extradition is inappropriate. In order, however, to deem the legal claim made in the second application as the equivalent of one made in the first application, we would have to define "ground" in this case as any claim that relies on the entry of the *nolle prosequi* to challenge the legality of the extradition proceedings.

Such a definition and the defendant's assertion would confuse "ground" with both the legal argument underlying the ground in this case and the factual allegations that form the basis of the underlying legal argument. In the second application a completely different legal effect is being ascribed to the entry of the *nolle prosequi.* To reiterate, in the first application the entry of the *nolle prosequi* was alleged to be a decision on the merits of the underlying manslaughter charge in New York which barred the state of New York from receiving the plaintiff; in the new application the *nolle* and its aftermath were alleged to be a jurisdictional bar to Connecticut's surrender of the plaintiff to New

York authorities. In the new habeas corpus application the alleged ground or legal basis for granting the relief sought is that the state of Connecticut is barred from surrendering the plaintiff to the New York authorities; the underlying legal argument supporting this ground is that the entry of the *nolle prosequi* along with a lapse in the reinstitution of the fugitive from justice charge violates the state of Connecticut's rules of practice and statutes for processing criminal matters so as to create this bar; and the factual allegations involved are, inter alia, the time of the entry of the *nolle prosequi* and the subsequent reinstitution of the fugitive from justice charge. In other words, on remand for a hearing on his second application the plaintiff would have to show that the *nolle* and the subsequent actions by the state of Connecticut on the fugitive from justice charge do, in the particular circumstances of this case, violate Connecticut's rules of practice and statutes, which violations in turn serve to bar Connecticut from surrendering the applicant to New York authorities to be sentenced on his New York conviction for manslaughter in the first degree.

The present case is thus distinguishable from the possibilities the *Sanders* court notes that would not occasion another hearing: identical grounds which are proven by different factual allegations, are supported by different legal arguments, are couched in different language or are varied in immaterial respects. *Sanders* v. *United States,* supra, 16. Nonetheless, because of the conceptual difficulties which the parties acknowledge attend this case we include the *Sanders* court admonition that "[s]hould doubts arise in particular cases as

to whether two grounds are different or the same, they should be resolved in favor of the applicant." Id.[6]

In view of our disposition of this case, we need not address the plaintiff's alternative claim that the court's ruling also constituted a violation of the Connecticut constitution. We thus follow the recognized policy of self-restraint and the basic judicial duty to eschew unnecessary determinations of constitutional questions. *Pepin* v. *Danbury*, 171 Conn. 74, 88, 368 A.2d 88. See also *Rescue Army* v. *Municipal Court*, 331 U.S. 549, 568–73, 67 S. Ct.

[6] We are constrained to remark on the defendant's concern that our disposition of this case may open the floodgates to unwarranted successive applications for habeas corpus relief which will needlessly burden the courts of this state with endless litigation. See also *Sanders* v. *United States,* 373 U.S. 1, 23, 83 S. Ct. 1068, 10 L. Ed. 2d 148 (Harlan, J., dissenting). We do not share the defendant's pessimism for several reasons. First, the nature of habeas corpus relief indicates that an applicant would normally seek to present all his claims as early as possible in order to be free of the alleged illegal detention. Second, under Practice Book, 1978, § 531, an applicant desirous of a second or successive hearing on the basis that he is alleging a different ground must show that his application does, indeed, involve a different ground, not merely a verbal reformulation of a previous ground, different legal arguments, or different factual allegations. Finally, it has been recognized that "habeas corpus has traditionally been regarded as governed by equitable principles. . . . Among them is the principle that a suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks." *Fay* v. *Noia*, 372 U.S. 391, 438, 83 S. Ct. 822, 9 L. Ed. 2d 837. The *Sanders* court in reiterating this principle added: "Nothing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation, to entertain collateral proceedings whose only purpose is to vex, harass, or delay." *Sanders* v. *United States,* supra, 18. This court would not afford the trial courts of this state less protection from needless vexation than the United States Supreme Court would grant federal district courts. Full consideration of the merits of the new application can be avoided if there has been an abuse of the writ remedy. Certainly a deliberate bypass of a ground on the first application would constitute one such abuse. *Fay* v. *Noia*, supra, 439.

1409, 91 L. Ed. 1666; *Ashwander* v. *Tennessee Valley Authority,* 297 U.S. 288, 346–47, 56 S. Ct. 466, 80 L. Ed. 688 (Brandeis, J., concurring). See generally Bickel, The Least Dangerous Branch: The Supreme Court at the Bar of Politics (1962).

There is error, the judgment is set aside and the case is remanded for a hearing consistent with this opinion.

In this opinion the other judges concurred.