******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

BISHOP, J., concurring. The record in the present case reflects that the petitioner filed the underlying petition for a writ of habeas corpus, his third, on August 8, 2016, and that, when the petition was received by the Superior Court, it was assigned a docket number.[1] In his filing, the petitioner claimed, inter alia, that his confinement was illegal because (1) his guilty plea to the underlying criminal offense was not voluntary, and (2) the 2013 and 2015 amendments to the earned risk reduction credit statute, General Statutes § 18-98e, which bore on his parole eligibility and were enacted subsequent to his conviction, violated the ex post facto clause of the United States constitution. In conjunction with his petition, the petitioner filed an application for a waiver of fees and payment of costs and a request for the appointment of counsel, which the court clerk granted on August 26, 2016. The record further reflects that, notwithstanding the docketing of the petition and the granting of the petitioner's request for counsel, the court, sua sponte, dismissed the petition pursuant to Practice Book § 23-29 without having actually appointed counsel and without having provided the petitioner notice and an opportunity to be heard on the motion to dismiss.

My colleagues affirm the habeas court's dismissal on the substantive grounds that the petitioner has no liberty interest in the receipt of earned risk reduction credit and that his claim regarding his guilty plea is barred by the doctrine of collateral estoppel. On the basis of this court's recent decision in *Holliday* v. *Commissioner of Correction*, 184 Conn. App. 228,     A.3d     (2018), my colleagues also affirm the habeas court's reliance on Practice Book § 23-29 to dispose of the petitioner's claims without affording him or his counsel notice or an opportunity to be heard before the court sua sponte dismissed his petition. Although I am bound by *Holliday* to concur with the outcome of this appeal, I write separately because I am concerned that, through this and prior opinions, this court has eroded the process rights of habeas petitioners contrary to the overarching purpose of habeas corpus, contrary to the decisional law of our Supreme Court, and contrary to the applicable provisions of the Practice Book.[2]

Specifically, I believe that, before a petition for a writ of habeas corpus can be dismissed pursuant to Practice Book § 23-29, the petitioner should be given notice of the court's inclination to dismiss, sua sponte, his petition and an opportunity to be heard on the question of whether dismissal is warranted. Our recent decisional law, however, including the majority's opinion in the present case, has condoned the growing habit of trial judges to dismiss petitions sua sponte pursuant to § 23-

29 without prior notice to the petitioner that the court is considering dismissal and without affording the petitioner an opportunity to be heard on the propriety of such dismissal.[3] Respectfully, I believe this to be a wrong-minded trend that represents the elevation of judicial efficiency over fair process, relevant decisional law, and applicable rules of practice.

The starting point for my analysis is the seminal case of *Mercer* v. *Commissioner of Correction*, 230 Conn. 88, 93, 644 A.2d 340 (1994), in which our Supreme Court opined: "Both statute and case law evince a strong presumption that a petitioner for a writ of habeas corpus is entitled to present evidence in support of his claims. General Statutes § 52-470 (a) provides that '[t]he court or judge hearing any habeas corpus shall proceed in a summary way to determine the facts and issues of the case, by hearing the testimony and arguments [in the case], and [shall] inquire fully into the cause of imprisonment, and . . . thereupon dispose of the case as law and justice require.' In *Negron* v. *Warden*, 180 Conn. 153, 158 n.2, 429 A.2d 841 (1980), we noted that whenever a court is 'legally required' to hear a habeas petition, § 52-470 (a) 'delineate[s] the proper scope of [the] hearing . . . .' The statute explicitly directs the habeas court to 'dispose of the case' only *after* 'hearing the testimony and arguments therein.' " (Emphasis in original.) *Mercer* v. *Commissioner of Correction*, supra, 93.

The *Mercer* court continued: "In our case law, we have recognized only one situation in which a court is not legally required to hear a habeas petition. In *Negron* v. *Warden*, supra, 180 Conn. 158, we observed that, pursuant to Practice Book § 531, [i]f a previous application brought on the same grounds was denied, the pending application may be dismissed without hearing, unless it states new facts or proffers new evidence not reasonably available at the previous hearing. We emphasized the narrowness of our construction of Practice Book § 531 by holding that dismissal of a second habeas petition without an evidentiary hearing is improper if the petitioner either raises new claims *or* offers new facts or evidence. Id., 158 and n.2. *Negron* therefore strengthens the presumption that, absent an explicit exception, an evidentiary hearing is always required before a habeas petition may be dismissed." (Emphasis in original; internal quotation marks omitted.) *Mercer* v. *Commissioner of Correction*, supra, 230 Conn. 93.[4]

As noted in *Mercer*, at the time that decision was issued, our rules of practice provided only one basis for a habeas petition to be dismissed without an evidentiary hearing. That provision, Practice Book (1995) § 531, provided: "If the petitioner has filed a previous application, it and the action taken thereon shall be summarily described in the pending application. If a previous appli-

cation brought on the same grounds was denied, the pending application may be dismissed without hearing, unless it states new facts or proffers new evidence not reasonably available at the previous hearing."

In 1995, the Practice Book provisions regarding habeas corpus were substantially amended. Notably, Practice Book (1995) § 531 was eliminated, thereby excising from the rules of practice the only explicit circumstance in which a petition for a writ of habeas corpus could be dismissed without an evidentiary hearing on the merits. At the same time, however, three new pertinent sections, Practice Book (1996) §§ 529C, 529H, and 529S (now §§ 23-24, 23-29, and § 23-40, respectively), were adopted, which provide the court with alternative vehicles for summary disposition of habeas matters. Understanding the import of these changes is key to resolving the question of whether a petition may be dismissed under § 23-29 without providing the petitioner notice and an opportunity to be heard.

The 1995 amendments to the Practice Book established two distinct procedural opportunities for the habeas court to summarily dispose of a habeas corpus petition without an evidentiary hearing. Practice Book § 23-24[5] effectively vests the court with a new gatekeeping function, authorizing the court to dispose of a case before it has been docketed by declining to "issue the writ" for certain enumerated grounds. Practice Book § 23-29 provides for the summary disposition of a petition once the writ has already been issued. Respectfully, I believe this court has blurred the important distinctions between the habeas court's gatekeeping function pursuant to § 23-24 and its authority to dismiss a pending matter for the reasons enumerated in § 23-29. Conflation of these two rules by this court has eroded the process rights of petitioners whose writs have been issued and for whom counsel has been appointed.

Pursuant to Practice Book § 23-24, when the habeas court exercises its gatekeeping function to decline to issue a writ, the matter is returned to the petitioner with a notation from the court setting forth the basis on which the court has declined to issue the writ.[6] This rule reflects the historical distinction between the issuance of the writ and the adjudication of the petitioner's claims for relief, which this court explained in its opinion in *Green* v. *Commissioner of Correction*, 184 Conn. App. 76,    A.3d   , cert. denied, 330 Conn. 933,    A.3d    (2018): "The meaning of [the] phrase [issue the writ] can be ascertained by reference to historical practices regarding the service and issuance of writs of habeas corpus in our state. At one point in time, a habeas petition was filed with the court prior to it being served on the [respondent] Commissioner [of Correction (commissioner)]. General Statutes (1918 Rev.) § 6033. The court would then determine whether to issue the writ. General Statutes (1918 Rev.) § 6033. It

was only if the court decided to issue the writ that the petition would be served on the commissioner by an officer of the court and a subsequent habeas trial be held. General Statues (1918 Rev.) § 6033; see also *Adamsen* v. *Adamsen*, 151 Conn. 172, 176, 195 A.2d 418 (1963) (Our statute requires that the application for a writ of habeas corpus shall be verified by the affidavit of the applicant for the writ alleging that he verily believes the person on whose account such writ is sought is illegally confined or deprived of his liberty. . . . The only purpose served by the application is to secure the issuance of the writ in the discretion of the court. The issues on which any subsequent trial is held are framed by the return and the pleadings subsequent thereto. . . . Put differently, [t]he issuance of the writ did not determine the validity of the [petition] . . . . On the contrary, it served only to bring the parties before the court in order that the issue of the alleged illegal restraint might be solved. *Adamsen* v. *Adamsen*, supra, 177." (Internal quotation marks omitted.) *Green* v. *Commissioner of Correction*, supra, 184 Conn. App. 80–81 n.3.

As noted, Practice Book § 23-29 was adopted in 1995 at the same time Practice § 23-24 was adopted. In my view, these sections, which are still in effect, provide procedurally different bases for the court to summarily dispose of a habeas corpus case. Section 23-24 provides a vehicle for the court to exercise a gatekeeping function to bar entry to the court of those cases in which it is patent that the court lacks jurisdiction over the claim, the petition is wholly frivolous on its face, or the relief requested in the petition is not available. Section 23-29 also provides a basis for the summary disposition of the case, but, in this instance, because § 23-29 is applicable only once the writ has been issued, the petition may not then be dismissed without affording the petitioner notice and a hearing on the motion to dismiss.

Although Practice Book § 23-29 has been characterized as the successor rule to Practice Book (1995) § 531, there is a significant distinction between the two regarding a petitioner's right to a hearing. Section 531 expressly authorized the court to dismiss a successive petition "*without hearing* unless it states new facts or proffers new evidence not reasonably available at the previous hearing"; (emphasis added); the successor rule, § 23-29, however, contains no parallel provision. To be sure, the new rule, § 23-29, did expand the bases on which a court is authorized to summarily dispose of a petition and now includes those in which (1) the court has no jurisdiction, (2) the petition fails to state a claim upon which habeas corpus relief can be granted, (3) the petition presents the same ground as a previously denied petition and fails to state new facts or proffer new evidence not reasonably available at the time of the prior petition, (4) the claims asserted in the petition are moot or premature, and (5) any other legally

sufficient ground for dismissal of the petition. See Practice Book § 23-29. Significantly, however, § 23-29 contains no provision authorizing the court to dismiss a pending petition without affording the petitioner a hearing and an opportunity to be heard on the motion to dismiss.[7] Consequently, in my view, the 1995 revision to the Practice Book effectuated two complementary changes. On one hand, it eliminated the one basis on which a writ, once issued, could be dismissed without affording a petitioner notice and the right to be heard, while at the same time creating a vehicle, § 23-24, through which the court, in the exercise of its gatekeeping function, may turn a petition away from the courthouse door by declining to issue the writ.

My understanding of the interplay between Practice Book §§ 23-24 and 23-29 is buttressed by the simultaneous adoption in 1995 of Practice Book § 23-40, which newly provided, inter alia, for the right of the petitioner to be present at "any evidentiary hearing and at any hearing or oral argument on a question of law which may be dispositive of the case . . . ." Although I recognize that this rule does not explicitly require the court to conduct a hearing before dismissing a petition pursuant to § 23-29, its provisions entitling a petitioner to be present at any dispositive hearing would be rendered illusionary if a petitioner had no right to a hearing at all.[8]

My view finds support, as well, in the general Practice Book rules regarding civil actions. At the outset, it is well established that "[h]abeas corpus is a civil proceeding." *Collins* v. *York*, 159 Conn. 150, 153, 267 A.2d 668 (1970). Consequently, "[a] habeas corpus action, as a variant of civil actions, is subject to the ordinary rules of civil procedure, unless superseded by the more specific rules pertaining to habeas actions." (Internal quotation marks omitted.) *Kendall* v. *Commissioner of Correction*, 162 Conn. App. 23, 45, 130 A.3d 268 (2015).[9]

Chapter 11 of the Practice Book, which relates to civil matters generally, provides for notice and an opportunity to be heard before a matter may be summarily dismissed. Pursuant to Practice Book § 11-1, "[e]very motion . . . directed to pleading or procedure . . . shall be in writing"; Practice Book § 11-1 (a); and "such motion . . . shall be served on all parties as provided in [Practice Book §§] 10-12 through 10-17." Practice Book § 11-1 (c). "The purpose of requiring written motions is not only the orderly administration of justice . . . but the fundamental requirement of due process of law"; (citation omitted) *Connolly* v. *Connolly*, 191 Conn. 468, 475, 464 A.2d 837 (1983); specifically, the requirement of adequate notice. See *Herrmann* v. *Summer Plaza Corp.*, 201 Conn. 263, 273, 513 A.2d 1211 (1986) ("[t]he requirement that parties file their motions in writing is to ensure that the opposing party has written notice of the motion to dismiss"). As will be made clear in the following paragraph, receipt of adequate

notice is essential in order for the nonmoving party to exercise its right under the Practice Book to be heard.

Our rules of practice grant the nonmoving party to a motion to dismiss two opportunities to be heard. First, Practice Book § 11-10 (a)[10] provides the adverse party to a motion to dismiss (as well as certain other specifically enumerated motions) with the opportunity to file a memorandum of law in opposition to the motion. The rules also provide the nonmovant with the right to present oral argument on the motion to dismiss at the court's short calendar.[11] Pursuant to Practice Book § 11-18 (a), "[o]ral argument is at the discretion of the judicial authority *except* as to motions to dismiss" and certain other motions. (Emphasis added.) "For those motions, oral argument shall be *a matter of right*, provided: (1) the motion has been marked ready in accordance with the procedure that appears on the short calendar on which the motion appears, or (2) a nonmoving party files and serves on all parties . . . a written notice stating the party's intention to argue the motion or present testimony." (Emphasis added.) Practice Book § 11-18 (a).

Application of the foregoing rules in the context of a motion to dismiss under Practice Book § 23-29 is most straightforward when it is the respondent who makes the motion. In such circumstances, it is clear that the respondent must file a written motion and a memorandum of law and serve the same on the petitioner, thus satisfying the requirements of Practice Book § 11-1. The effect of the service of the motion and brief is to provide the petitioner with the notice necessary for the petitioner to be able to (1) exercise his rights to file a memorandum of law in opposition to the motion pursuant to Practice Book § 11-10 and (2) claim the matter for oral argument pursuant to Practice Book § 11-18.[12] Thus, where the respondent properly serves the petitioner with notice of its motion and the grounds therefor, and the petitioner simply fails to exercise his right to file a brief or make oral argument, it is clear that the habeas court may properly decide the motion without having heard from the petitioner.

I recognize, of course, that Practice Book § 23-29, unlike its parallel provision, Practice Book § 10-30,[13] contemplates that a court may dismiss a petition sua sponte even where the ground for dismissal does not implicate subject matter jurisdiction. Nowhere in § 23-29, however, is there a provision for the court to act without providing notice to the petitioner and an opportunity to be heard on the court's sua sponte motion. Thus, I conclude that, because § 23-29 does not explicitly provide for the court to act sua sponte without providing notice and an opportunity for the petitioner to be heard on the motion, it is unreasonable and contrary to the rules pertaining to civil matters generally for the court to import such a provision into § 23-29.

A review of the decisional history of this court regarding Practice Book § 23-29 reveals our inconsistent treatment of this issue.[14] In *Mitchell* v. *Commissioner of Correction*, 93 Conn. App. 719, 725–26, 891 A.2d 25, cert. denied, 278 Conn. 902, 896 A.2d 104 (2006), a panel of this court held that the habeas court had improperly dismissed a petition pursuant to § 23-29 without providing notice and a hearing to the petitioner. In *Boyd* v. *Commissioner of Correction*, 157 Conn. App. 122, 125–27, 115 A.3d 1123 (2015), this court explicitly relied on *Mitchell* in holding that it was improper for the habeas court to have dismissed a petition pursuant to § 23-29 without affording the petitioner notice and an opportunity for a hearing. The language of *Boyd* is instructive. There, this court stated: "Our Supreme Court has noted that '[b]oth statute and case law evince a strong presumption that a petitioner for a writ of habeas corpus is entitled to present evidence in support of his claims.' *Mercer* v. *Commissioner of Correction*, [supra, 230 Conn. 93]. This court previously has held that it is an abuse of discretion by the habeas court to dismiss a habeas petition sua sponte under Practice Book § 23-29 without fair notice to the petitioner and a hearing *on the court's own motion to dismiss. Mitchell* v. *Commissioner of Correction*, [supra, 93 Conn. 725–26]." (Emphasis added.) *Boyd* v. *Commissioner of Correction*, supra, 125. The court further noted: "It is of particular importance that the petitioner had requested the appointment of counsel when filing his second habeas petition. By sua sponte dismissing the petition before any counsel was appointed, the habeas court prevented the petitioner from accessing the legal services needed to help clarify the grounds presented and to ensure that they were not duplicative of the petitioner's prior habeas petition.

"The respondent concedes, and we agree, that the petitioner should have been afforded fair notice and a hearing before the court sua sponte dismissed the second habeas petition, and agrees with the petitioner that the proper course of action is to remand this case to the habeas court for a hearing. The respondent argues, however, that the hearing should be limited to whether the new claims of prosecutorial impropriety should be dismissed under Practice Book § 23-29. We agree with the respondent to the extent that the second habeas petition in its current form contains a duplicative claim of ineffective assistance of counsel predicated upon the same facts and evidence as alleged in the first amended petition for a writ of habeas corpus. We caution, however, that nothing in this opinion should be read as foreclosing the opportunity for the petitioner, or his counsel if one is appointed for him, to amend the current petition to articulate any new facts or evidence he wants to proffer or to state new grounds upon which he believes habeas relief should be granted, including the opportunity to clarify whether his claim of ineffec-

tive assistance of counsel is founded upon new facts or evidence not reasonable available at the time of his prior petition." Id., 126–27.

Notwithstanding the history of Practice Book §§ 23-24, 23-29, and 23-40, the general Practice Book rules regarding civil actions, and this court's strong admonition in *Boyd*, this court has now issued decisions, including the majority's opinion in the present case, that appear to violate the thrust of *Mercer* and contradict *Boyd*'s admonition that a habeas petitioner is entitled to notice and an opportunity to be heard before his or her petition is dismissed pursuant to § 23-29. I recognize, of course, that the habeas corpus workload has become burdensome to the judiciary.[15] Respectfully, however, I do not believe that we should participate, for the sake of judicial efficiency, in the erosion of the rights of habeas petitioners established by time-tested jurisprudence and the rules adopted by the Superior Court. Rather, I believe that the proper exercise of the court's gatekeeping function pursuant to § 23-24 offers the greatest pathway to the swift disposal of frivolous, wasteful, and repetitious petitions without sacrificing the very purpose for which this enshrined writ exists.

For the reasons stated, I respectfully concur.

[1] The petition was docketed as TSR-CV16-4008315-S. "At common law habeas corpus was a formalistic proceeding. The application played no role in framing the issues, its only purpose being to secure the issuance of the writ. . . . The return, whose truth could not be contested . . . limited the proceeding to the determination of a question of law. Early on the legislature corrected this deficiency by permitting the statements in the return to be contested. . . . At that point and until fairly recently the issues on which a subsequent trial was to be held were framed by the return and the pleadings subsequent thereto. . . . In recent years the application has come to be regarded as a pleading in the nature of a complaint . . . and the return in the nature of an answer." (Citations omitted.) *Arey* v. *Warden*, 187 Conn. 324, 331–32, 445 A.2d 916 (1982); see also *Carpenter* v. *Commissioner of Correction*, 274 Conn. 834, 842 n.7, 878 A.2d 1088 (2005). Translating the old into newer procedure, one can fairly say that once a habeas petition has been docketed, the writ has effectively issued, and once a return has been filed, the issues have been joined for judicial determination. Overlying this procedure are various Practice Book provisions providing for the summary disposition of the petition.

[2] As a matter of policy, one panel of this court may not reverse the ruling of a previous panel. See *Consiglio* v. *Transamerica Ins. Group*, 55 Conn. App. 134, 138 n.2, 737 A.2d 969 (1999). Indeed, this rule is not merely an axiom of appellate collegiality; a prior ruling by one panel is binding precedent on a subsequent panel. See *Samuel* v. *Hartford*, 154 Conn. App. 138, 144, 105 A.3d 333 (2014) ("[w]e are bound by [our prior] precedent, as it is axiomatic that one panel of this court cannot overrule the precedent established by a previous panel's holding").

[3] See *Holliday* v. *Commissioner of Correction*, supra, 184 Conn. App. 235–38; *Gilchrist* v. *Commissioner of Correction*, 180 Conn. App. 56, 62–63, 182 A.3d 690, cert. granted, 329 Conn. 908, 186 A.3d 13 (2018); *Pentland* v. *Commissioner of Correction*, 176 Conn. App. 779, 787–88, 169 A.3d 851, cert. denied, 327 Conn. 978, 174 A.3d 800 (2017); *Coleman* v. *Commissioner of Correction*, 137 Conn. App. 51, 57–58, 46 A.3d 1050 (2012); but see *Boyd* v. *Commissioner of Correction*, 157 Conn. App. 122, 125–27, 115 A.3d 1123 (2015); see also *Perez* v. *Commissioner of Correction*, 326 Conn. 357, 366,163 A.3d 597 (2017) (habeas court afforded petitioner notice and hearing before dismissing petition).

[4] The presumption espoused in *Negron* and affirmed in *Mercer*, that a habeas petitioner is entitled to an evidentiary hearing unless a rule explicitly provides to the contrary, was acknowledged by this court in 2009 in *Riddick* v. *Commissioner of Correction*, 113 Conn. App. 456, 966 A.2d 762 (2009),

appeal dismissed, 301 Conn. 51, 19 A.3d 174 (2011). *Riddick* concerned the application of Practice Book (2009) § 23-42 (a), which provided in relevant part: "If the judicial authority finds that the case is wholly without merit, it shall allow counsel to withdraw and *shall consider whether the petition shall be dismissed or allowed to proceed*, with the petitioner pro se. . . ." (Emphasis added.) In affirming the habeas court's then-existent authority to dismiss a petition under this rule, the *Riddick* court opined: "[Practice Book (2009) § 23-42] provides an explicit exception to the general rule requiring an evidentiary hearing before a habeas petition may be dismissed. See *Mercer* v. *Commissioner of Correction*, [supra, 230 Conn. 93]." *Riddick* v. *Commissioner of Correction*, supra, 467.

It is noteworthy that, not long after the issuance of the decision in *Riddick*, Practice Book (2009) § 23-42 was amended to eliminate the court's authority to dismiss a petition when granting the motion of the petitioner's counsel for leave to withdraw. Section 23-42 now provides that a petitioner whose counsel has been permitted to withdraw may, nevertheless, proceed on a self-represented basis. Thus, the exception noted in *Negron* for circumstances in which the habeas court need not hold a hearing before dismissing a petition no longer pertains, with the result that Practice Book § 23-24 now provides the sole avenue for summarily disposing of a petition without a hearing of any kind.

[5] Practice Book § 23-24 provides: "(a) The judicial authority shall promptly review any petition for a writ of habeas corpus to determine whether the writ should issue. The judicial authority shall issue the writ unless it appears that:

"(1) the court lacks jurisdiction;

"(2) the petition is wholly frivolous on its face; or

"(3) the relief sought is not available.

"(b) The judicial authority shall notify the petitioner if it declines to issue the writ pursuant to this rule."

[6] See, e.g., *Fuller* v. *Commissioner of Correction*, 144 Conn. App. 375, 377, 71 A.3d 689 (when confronted with application for issuance of writ of habeas corpus claiming that parole board had acted unreasonably in denying parole, habeas court, after reviewing petition, sent petitioner letter indicating that "[t]he [h]abeas [c]orpus petition is declined and is being returned because the court lacks jurisdiction per . . . Practice Book § 23-24 [a] [1]"), cert. denied, 310 Conn. 946, 80 A.3d 907 (2013).

[7] Respectfully, I believe that the provisions of Practice Book §§ 23-24 and 23-29, authorizing the habeas court to summarily dispose of a writ or petition for certain enumerated grounds, are complementary and not mere duplications of the same judicial authority. To the extent the court mindfully fulfills its gatekeeping function pursuant to § 23-24, it may simply return the writ to the petitioner with a note indicating the basis for its decision to decline to issue the writ. If, however, a writ escapes preliminary review, the court's responsibility is more burdensome. In my view, the resolution of this conundrum does not lie in eroding the process rights of a petitioner whose writ has been issued; rather, it suggests that the court should develop a more mindful process to weed out inappropriate writs as a preliminary matter pursuant to its gatekeeping function. Although this suggestion may entail some administrative changes in the Superior Court regarding the docketing of petitions, I believe that, in the long run, a more fulsome use of the court's authority pursuant to § 23-24 would maximize judicial efficiency without the unnecessary dilution of the petitioner's process rights that attach once the writ has been issued.

[8] In coming to this view, I am mindful of this court's contrary conclusion in *Holliday*: "[T]he rules of practice were promulgated to create one harmonious and consistent body of law. . . . If courts can by any fair interpretation find a reasonable field of operation for two [rules of practice] without destroying their evident meaning, it is the duty of the courts to do so, thus reconciling them and according to them concurrent effect. . . . To give effect to both Practice Book §§ 23-29 and 23-40, the latter section should be read to give a petitioner the right to be present at an evidentiary hearing if one is held, not to give a petitioner the absolute right to an evidentiary hearing itself." (Citation omitted; internal quotation marks omitted.) *Holliday* v. *Commissioner of Correction*, supra, 184 Conn. App. 236 n.10. With all respect to my colleagues in the *Holliday* decision, the panel's view, if it endures, would eviscerate any fair process rights that § 23-40 confers on habeas petitioners whose writs have eluded disposition pursuant to Practice Book § 23-24. In my view, the clearer route to harmonizing § 23-29 with § 23-40 is to conclude that the latter rules entitle a habeas petitioner to notice and an opportunity to be heard before dismissal pursuant to § 23-

29. Achieving harmony in the habeas rules, a value *Holliday* exhorts, is fully in accord with the presumption of a hearing entitlement embodied in *Mercer*, whereas the view espoused in *Holliday* negates by implication the overarching and enduring admonition of *Mercer*.

[9] See, e.g., *Turner* v. *Commissioner of Correction*, 163 Conn. App. 556, 563, 134 A.3d 1253 (applying General Statutes § 52-212a and Practice Book § 17-4, which govern motions to open and set aside civil judgments), cert. denied, 323 Conn. 909, 149 A.3d 980 (2016); *Kendall* v. *Commissioner of Correction*, supra, 162 Conn. 46 (applying Practice Book § 15-6, which allows for opening argument in civil trials before court or jury); *Carmon* v. *Commissioner of Correction*, 148 Conn. App. 780, 785–86, 87 A.3d 595 (2014) (holding that General Statutes § 52-119 and Practice Book § 10-18, which apply generally to civil actions, give habeas court authority to render default judgment or nonsuit against party who fails to comply with pleading requirements); *Fuller* v. *Commissioner of Correction*, 75 Conn. App. 814, 817–19, 817 A.2d 1274 (holding that dismissal for lack of due diligence in prosecuting civil case pursuant to Practice Book § 14-31 was legally sufficient ground for dismissal of habeas corpus action and fell under catchall "other legally sufficient ground" provision of Practice Book § 23-29 [5]), cert. denied, 263 Conn. 926, 823 A.2d 1217 (2003).

[10] Practice Book § 11-10 (a) provides in relevant part: "A memorandum of law briefly outlining the claims of law and authority pertinent thereto shall be filed and served by the movant with the following motions and requests . . . (2) motions to dismiss except those filed pursuant to [Practice Book §] 14-3 . . . . Memoranda of law may be filed by other parties on or before the time the matter appears on the short calendar."

[11] Pursuant to Practice Book § 11-13 (a), all motions must be placed on the short calendar list, and, as per Practice Book § 11-15, they are to be assigned automatically by the clerk without written claim.

[12] Moreover, a cursory review of the habeas corpus short calendar of the Superior Court for the judicial district of Tolland, geographical area number nineteen, reveals that motions to dismiss are routinely marked "arguable." See, e.g., TSR – Short Calendar 01 – Civil Arguable Matters, October 29, 2018 (TSR SC 01), available at http://civilinquiry.jud.ct.gov/Calendars/SCBy-LocDetail.aspx?ccid=94517 (last visited November 1, 2018).

[13] Practice Book § 10-30 provides in relevant part: "(a) A motion to dismiss shall be used to assert: (1) lack of jurisdiction over the subject matter; (2) lack of jurisdiction over the person; (3) insufficiency of process; and (4) insufficiency of service of process. . . ."

[14] The issue presented in the present case has been raised in our Supreme Court on multiple occasions, but the court has each time declined to address it. See *Kaddah* v. *Commissioner of Correction*, 299 Conn. 129, 133–34, 141 n.13, 135, 7 A.3d 911 (2010) (affirming habeas court's dismissal of petition pursuant to § 23-29 where petitioner failed to state valid claim for relief and declining to address petitioner's claim on appeal that he should have been afforded notice and opportunity to be heard before habeas court dismissed his petition because, "even if [it] were to agree with [that claim], that conclusion still would not lead to the relief that the petitioner requested"); *Oliphant* v. *Commissioner of Correction*, 274 Conn. 563, 568, 877 A.2d 761 (2005) (declining to address petitioner's claim that Appellate Court improperly affirmed habeas court's dismissal of his habeas petition sua sponte without notice or a hearing, as claim was outside scope of question certified for review by Supreme Court). This may soon change, however. Our Supreme Court recently granted a habeas petitioner's petition for certification to appeal from this court's decision in *Gilchrist* v. *Commissioner of Correction*, supra, 180 Conn. App. 56, in which this court affirmed the habeas court's sua sponte dismissal of the habeas petition under § 23-29 without affording the petitioner notice and an opportunity to be heard on the motion. The court certified the following question: "Did the Appellate Court properly affirm the habeas court's dismissal of the petition when the habeas court took no action on the petitioner's request for counsel and did not give the petitioner notice and an opportunity to be heard on the court's own motion to dismiss the petition pursuant to Practice Book § 23-29?" *Gilchrist* v. *Commissioner of Correction*, supra, 329 Conn. 908.

[15] Indeed, data from the Judicial Branch reveal that the tide of incoming habeas petitions appears to be outpacing the rate at which the habeas court is able to dispose of them. For example, during the fiscal year of 2016–2017, 762 habeas cases were added to the docket of the Superior Court for the judicial district of Tolland, whereas only 678 were disposed of. Civil Case Movement: July 1, 2016 to June 30, 2017, available at https://www.jud.ct.gov/

statistics/civil/CaseDoc 1617.pdf (last visited November 1, 2018). This unbalanced flow of habeas cases is reflected in the steadily increasing number of cases pending at the end of each fiscal year. For example, at the end of the 2014–2015 fiscal year, there were 1451 habeas cases then pending, up from 1128 at the beginning of that year. Civil Case Movement: July 1, 2014 to June 30, 2015, available at https://www.jud.ct.gov/statistics/civil/ CaseDoc 1415.pdf (last visited November 1, 2018). By the end of the following fiscal year, the number of pending cases had increased to 1562; Civil Case Movement: July 1, 2015 to June 30, 2016, available at https://www.jud.ct.gov/ statistics/civil/CaseDoc 1516.pdf (last visited November 1, 2018); and, by the end of the 2016–2017 fiscal year, that figure had risen again, to 1637. Civil Case Movement: July 1, 2016 to June 30, 2017, supra.

---